**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth O. NICHOLS, Defendant–Appellant.**

No. 91–5581.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1992.

Decided Nov. 6, 1992.

Rehearing and Rehearing En Banc Denied Feb. 16, 1993.

Steven H. Cook, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Knoxville, Tenn. and Jerry G. Cunningham, U.S. Atty., Office of the U.S. Atty., Chattanooga, Tenn., for plaintiff-appellee.

William B. Carter (argued and briefed), Carter, Mabee & Paris, Chattanooga, Tenn., for defendant-appellant.

Before: JONES and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant, Kenneth O. Nichols, challenges the sentence imposed under the sentencing guidelines upon his guilty plea to conspiracy to distribute cocaine. A majority of the court has concluded that the sentence must be affirmed. For reasons stated in Part II of the following opinion, I would vacate Nichols' sentence and remand for resentencing.

I

On March 4, 1988, Georgia law-enforcement officers, acting on a lead from a lawful wiretap of suspected drug dealer David Sledge, observed Nichols sell Sledge three ounces of cocaine in a post office parking lot. Nichols and Sledge were arrested, and the ensuing search of Nichols and his vehicle yielded two ounces of cocaine, four firearms, and almost five thousand dollars.

Nichols was charged and subsequently released on bond by the Georgia state courts. Soon thereafter, Nichols became involved in further cocaine trafficking with Robert Harkins, who occasionally performed various construction jobs for Nichols. It appears that Nichols supplied Harkins with cocaine, while Harkins, in turn, supplied Nichols with firearms.

The conviction forming the basis for the present appeal had its genesis in March of 1990, when a third party contacted Harkins and told him of individuals willing to sell kilogram quantities of cocaine. Unbeknownst to Nichols or Harkins, the suppliers were undercover federal law-enforcement officers. Harkins passed word of the suppliers on to Nichols, who asked Harkins to price the cocaine. Upon learning that the suppliers were asking $20,000 per kilogram, Nichols and Harkins agreed to purchase five kilograms. At some point prior to the transaction, Nichols displayed to Harkins a box full of cash and assured Harkins that he had sufficient funds to complete the transaction. Nichols asked

Harkins to meet with the suppliers, apparently so that he could avoid another arrest. Nichols also instructed Harkins to bring one kilogram of cocaine to him for testing before paying for it, then return to the suppliers with the full payment if the cocaine tested positive.

Harkins and the undercover agents met in a motel room in Tennessee to negotiate the purchase of the five kilograms. When the agents refused to allow Harkins to leave with a kilogram for testing without paying for it, Harkins telephoned Nichols, who told him to call off the deal. The transaction was never completed.

Nichols and Harkins met in September of 1990 and agreed to contact the undercover agents again with an eye toward purchasing cocaine. Pursuant to their agreement, Harkins contacted the agents and negotiated a price of $65,000 for three kilograms of cocaine and further agreed that the transfer would take place in Cleveland, Tennessee. This time, Harkins was to purchase one kilogram, take it to Nichols for testing, then assuming it tested positive, return to purchase the remaining two kilograms. Meanwhile, Nichols would remain at a nearby location known only to himself and Harkins.

The purchase date was set for September 21, 1990. Prior to the meeting, when Harkins asked Nichols whether he should carry a firearm, Nichols responded that Harkins should use his discretion. When Harkins arrived at the agreed-upon meeting place, he was arrested. The ensuing search revealed that Harkins carried a loaded firearm.

Unknown to Nichols and Harkins, surveillance officers had observed them meeting together prior to the planned transaction. Approximately fifteen to twenty minutes after Harkins' arrest, officers found Nichols emerging from a wooded area toward his truck, parked nearby. In the woods, agents found $40,000 in cash hidden in a tree stump. A search of Nichols' vehicle revealed a shoulder holster but no firearm. Soon after the arrests, Harkins decided to cooperate with the authorities.

On October 10, 1990, Nichols was charged in a three-count indictment. Count one charged Nichols and Harkins with conspiracy to possess with intent to distribute cocaine, and count two charged them with attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (1988) (amended Nov. 29, 1990) and 21 U.S.C. § 846 (1988). Count three charged Nichols and Harkins with traveling in interstate commerce to facilitate a drug trafficking offense, in violation of 18 U.S.C. § 1952(a) (1988) (amended Nov. 29, 1990). On December 10, 1990, Nichols pleaded guilty to count one of the indictment.

A presentence report, filed on March 11, 1991, set a sentencing guideline range of 188 to 235 months. Nichols filed numerous objections to the report, and on April 1 and April 29, 1991, the court held hearings to consider Nichols' objections. At the conclusion of the second hearing, the district court announced that it would consider a prior uncounseled misdemeanor conviction in calculating Nichols' criminal-history score. The court further indicated that it would consider evidence that was illegally seized in the course of Nichols' 1988 arrest on state drug charges in determining where, within the recommended guideline range, to sentence Nichols.[1] This timely appeal followed.

## II

I first consider Nichols' claim that the district court improperly considered a prior uncounseled misdemeanor conviction in calculating his criminal-history score under the sentencing guidelines. In 1983, Nichols pleaded nolo contendere to driving under the influence of alcohol ("DUI"), a misdemeanor, for which Nichols was fined but not imprisoned. Nichols was not represented by counsel in the DUI proceedings, and the court below found that Nichols did not knowingly waive his right to counsel.

Nichols advances a two-pronged attack against the counting of his DUI conviction. First, Nichols contends that the district

1. The district court's opinion is published at 763 F.Supp. 277.

court applied the wrong version of the guidelines. Because Nichols was sentenced on April 29, 1991, the district court applied the 1990 version of the guidelines, which became effective on November 1, 1990. Nichols argues, however, that the court should have applied the 1989 version of the guidelines, as the 1990 version became effective only after the criminal conduct to which he pleaded guilty. Because Nichols challenges the application of the sentencing guidelines to the undisputed facts, our review is de novo. *United States v. Edgecomb,* 910 F.2d 1309, 1311 (6th Cir.1990).

In imposing a sentence, the sentencing court is normally required to apply the guidelines in effect on the date of sentencing. *United States v. Jennings,* 945 F.2d 129, 135 n. 1 (6th Cir.1991); *see also* 18 U.S.C. § 3553(a)(4), (5) (1988). Nonetheless, when the guidelines in effect at the time of sentencing provide for a greater term of imprisonment than those in effect at the time of the commission of the crime, ex post facto problems may arise; thus, the court may not impose a sentence in excess of that permitted under the version of the guidelines in effect at the time of the criminal conduct at issue. *United States v. Nagi,* 947 F.2d 211, 213 n. 1 (6th Cir.1991), *cert. denied,* ⎯ U.S. ⎯, ⎯, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

For purposes of Nichols' present challenge, I believe that any differences between the 1990 version of the guidelines, under which Nichols was sentenced, and the 1989 version, which he argues should have been applied, are irrelevant. The operative provision of the guidelines is section 4A1.2. The commentary to the 1990 version of that section provides that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted." United States Sentencing Commission, *Guidelines Manual* § 4A1.2, comment. (n. 5) (Nov. 1990) [hereinafter U.S.S.G.]. The commentary further provides that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was

not imposed." *Id.* comment. (backg'd). Thus, the commentary instructs the sentencing court to count a prior uncounseled misdemeanor conviction for DUI in calculating a defendant's criminal history score.

The 1989 version of the guidelines provides, by contrast, that a

sentence resulting [from] a valid conviction is to be counted in the criminal history score.... Also, if to count an uncounseled misdemeanor conviction would result in the imposition of a sentence of imprisonment under circumstances that would violate the United States Constitution, then such conviction shall not be counted in the criminal history score.

*Id.* comment. (n. 6) (Nov. 1989). Thus, the 1989 version of the guidelines requires the court to count a prior uncounseled misdemeanor conviction unless doing so would violate the United States Constitution. If counting the conviction would offend the Constitution, however, nothing in more recent versions of the guidelines would permit a court to ignore this constitutional infirmity. Accordingly, under the 1989 and subsequent versions of the sentencing guidelines, an uncounseled misdemeanor conviction for DUI is to be counted unless doing so would violate the Constitution.

In his second line of attack, Nichols advances precisely such a constitutional claim, and contends that the Sixth Amendment proscribes the use of a prior uncounseled misdemeanor conviction, for which a sentence of imprisonment was not imposed, to enhance the term of imprisonment for a subsequent conviction. Both parties recognize that the right to counsel guaranteed by the Sixth Amendment applies to state felony proceedings through the Fourteenth Amendment, and that the state must provide an indigent defendant with counsel unless the defendant competently and intelligently waives that right. *See Gideon v. Wainwright,* 372 U.S. 335, 340, 342, 83 S.Ct. 792, 794, 795, 9 L.Ed.2d 799 (1963). In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Court held that the Sixth Amendment also prohibited the use of a prior uncounseled *felony* conviction to enhance a defendant's punish-

ment for a subsequent offense under a state recidivist statute. *See id.* at 115, 88 S.Ct. 258, 19 L.Ed.2d 319.

In *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court extended the Sixth Amendment right to counsel to misdemeanor prosecutions in which the defendant was sentenced to a prison term. *Id.* at 33, 92 S.Ct. at 2010. Noting that "[t]he assistance of counsel is often a requisite to the very existence of a fair trial," *id.* at 31, 92 S.Ct. at 2009, the Court observed that the right to counsel is particularly crucial where the deprivation of a person's liberty is at stake and, accordingly, held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial," *id.* at 37, 92 S.Ct. at 2012; *see also Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (limiting right to counsel in misdemeanor cases to those situations where imprisonment is imposed as punishment).

In *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam), the Court addressed whether an uncounseled misdemeanor conviction, for which no term of imprisonment had been imposed, could be used to enhance a defendant's term of imprisonment for a subsequent conviction. *Id.* at 222, 100 S.Ct. at 1585. Although five Justices agreed, in a brief per curiam, to strike down the use of an uncounseled misdemeanor conviction to convert a subsequent misdemeanor into a felony with a prison term, they did so based on the reasoning of three separate concurrences, none of which garnered the support of all five Justices. *See id.* at 224, 100 S.Ct. at 1586.

Certainly the broadest rationale in *Baldasar* was that of Justice Marshall, in a concurrence joined by Justices Brennan and Stevens. Noting that the Court in *Argersinger* had relied heavily on the premise that an uncounseled conviction is not sufficiently reliable to support a deprivation of liberty, Justice Marshall reasoned that

[a]n uncounseled conviction does not become more reliable merely because the accused has been validly convicted of a subsequent offense. For this reason, a conviction which is invalid for purposes of imposing a sentence of imprisonment for the offense itself remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute.... [A] rule that held a conviction invalid for imposing a prison term directly, but valid for imposing a prison term collaterally, would be an illogical and unworkable deviation from previous cases.

*Id.* at 227–29, 100 S.Ct. at 1588 (Marshall, J., concurring). Justice Stewart, also joined by Justices Brennan and Stevens, held that subjecting a defendant to an increased term of imprisonment solely on the basis of a prior uncounseled misdemeanor conviction violated the constitutional rule of *Scott v. Illinois. Id.* at 224, 100 S.Ct. at 1586 (Stewart, J., concurring). Justice Blackmun provided the critical fifth vote. In his separate concurrence, Justice Blackmun adhered to his dissent in *Scott,* in which he advocated a "bright line" approach which would recognize the right to counsel whenever the offense was punishable by more than six months of imprisonment, regardless of the actual punishment imposed, or whenever the defendant was actually subjected to a term of imprisonment. *Id.* at 229–30, 100 S.Ct. at 1589 (Blackmun, J., concurring).

Given the diverse rationales supporting *Baldasar*'s result, numerous courts have questioned whether the case expresses *any* single holding and, accordingly, have largely limited *Baldasar* to its facts. *See United States v. Castro–Vega,* 945 F.2d 496, 499–500 (2d Cir.1991); *United States v. Eckford,* 910 F.2d 216, 218–20 & n. 8 (5th Cir.1990); *Schindler v. Clerk of Circuit Court,* 715 F.2d 341, 344 (7th Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984); *United States v. Robles–Sandoval,* 637 F.2d 692, 693 n. 1 (9th Cir.), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981). While I appreciate the reluctance of these courts to extend *Baldasar*'s reach, I am nevertheless

convinced that even a narrow reading of *Baldasar* proscribes the use of a prior uncounseled misdemeanor conviction to enhance a defendant's sentence upon a subsequent conviction under the sentencing guidelines.

The parallels between *Baldasar* and the instant case are substantial: in both cases the defendant was convicted of a misdemeanor for which no counsel was provided and for which the defendant did not waive the right to counsel; similarly, in both cases the defendant's term of imprisonment upon a subsequent conviction was enhanced based upon the prior uncounseled misdemeanor conviction. I can discern no logical or principled basis upon which to distinguish *Baldasar* from the case at bar. That the sentence enhancement in *Baldasar* resulted under an enhanced penalty statute that converted defendant's misdemeanor into a felony, while the instant case arises under the criminal-history provisions of the sentencing guidelines, is a distinction without a constitutional difference. The right to counsel recognized in *Argersinger* is grounded in the realization that a defendant, unaided by counsel, is simply unequipped to prepare his or her defense, thus making the uncounseled conviction inherently unreliable. *See Argersinger*, 407 U.S. at 31–32, 92 S.Ct. at 2009–10. "Left without the aid of counsel [a defendant] may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible." *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). This unreliability reaches constitutional magnitude where the conviction results in the deprivation of liberty; whether this deprivation is imposed directly or collaterally is analytically irrelevant. *See State v. Laurick*, 575 A.2d 1340, 1347

(N.J.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 429, 112 L.Ed.2d 413 (1990); *State v. Priest*, 722 P.2d 576, 578–79 (Kan.1986); *State v. Dowd*, 478 A.2d 671, 678 (Me.1984). If an uncounseled conviction cannot, consistent with the Sixth Amendment, support a term of imprisonment initially, the existence of a subsequent conviction does not make an increased term of imprisonment based on that conviction constitutionally more palatable. Accordingly, I conclude that the district court erred in counting Nichols' prior uncounseled misdemeanor conviction in calculating his criminal-history score under the sentencing guidelines. My colleagues on the panel having seen the matter differently, I respectfully dissent from this court's judgment as to the issue discussed in this part of my opinion.

## III

Nichols next contends. that the district court erred in considering evidence obtained during his 1988 arrest on state drug charges, evidence that the Georgia state courts later suppressed as the product of an illegal seizure. The United States counters that this Court does not have jurisdiction to review Nichols' claim, and that the lower court, in any event, properly considered the evidence.[2]

■■■ We begin by reviewing the basis for our jurisdiction. The parties agree that the district court did not rely on the contested evidence in fixing Nichols' offense level, but at most, weighed the evidence in sentencing Nichols at the upper end of his guideline range of 188 to 235 months.[3] The United States argues that a sentence within the applicable guideline range is not appealable. The scope of our jurisdiction in this case is governed by 18 U.S.C. § 3742(a), which provides that a defendant

---

**2.** The United States also suggests that we refuse to reach this issue on the ground that the challenged evidence did not affect Nichols' sentence. In finding that a preponderance of evidence supported the existence of the 1988 criminal conduct, the district court stated that it could "make this determination without really considering the suppressed ... evidence." J.A. at 28. The court added, however, that it "may consider this [suppressed] evidence which does lend added ballast to the Court's factual conclusions."

*Id.* Despite the ambiguity of this language, we find, for purposes of this appeal, that the court relied upon the suppressed evidence.

**3.** As noted below, a district court, when imposing a sentence with a guideline range exceeding twenty-four months, must state "the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1) (1988)

may appeal a sentence imposed under the guidelines if the sentence

> (1) was imposed in violation of law;

> (2) was imposed as a result of an incorrect application of the sentencing guidelines; or

> (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment ... than the maximum established in the guideline range....

18 U.S.C. § 3742(a) (1988).

We conclude that § 3742(a)(1) vests this Court with jurisdiction to review Nichols' claim. Nichols contends that the district court's consideration of illegally seized evidence in imposing his sentence violated the Fourth Amendment. Because Nichols contests the constitutionality of his sentence, his challenge is clearly subject to review. *See United States v. Pickett*, 941 F.2d 411, 414 (6th Cir.1991) (challenge to constitutionality of drug ratio used by sentencing guidelines is may be reviewed under § 3742(a)(1)); *cf. United States v. Hamilton*, 949 F.2d 190, 193 (6th Cir.1991) (per curiam) (while refusal to depart downward may normally not be reviewed, where refusal is based on district court's legal interpretation of the guidelines, appellate court may review under § 3742(a)(1)). Thus, we proceed to consider the merits of Nichols' claim.[4]

Congress has directed that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (1988). The sentencing guidelines incorporate this statutory language and instruct the court to consider all such information in sentencing a defendant within the recommended guideline range, "unless otherwise prohibited by law." *See* U.S.S.G. § 1B1.4 (Nov. 1991)[5]; *cf. id.* § 6A1.3(a) (permitting court, in resolving factual disputes, to consider relevant information without regard to its admissibility under the rules of evidence provided the information is sufficiently reliable to support its probable accuracy). While conceding the all-encompassing scope of this statutory and guideline language, Nichols asserts that the district court's reliance on evidence illegally seized during his 1988 arrest violates the exclusionary rule embedded in the Fourth Amendment's proscription on illegal searches and seizures. We agree that the statutory language does not resolve Nichols' constitutional claim; although Congress has considerable latitude in determining the rights of criminal defendants, it may not allocate these rights in a manner offensive to the United States Constitution.

---

**4.** Although the United States cites two cases from this circuit that arguably support the opposite conclusion, both cases are distinguishable. In *United States v. Sawyers*, 902 F.2d 1217 (6th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991), the court opined that, because the defendant's sentence was within the proper guideline range, he was precluded from appealing his sentence under 18 U.S.C. § 3742. *Id.* at 1221 n. 5. Nothing in the opinion, however, suggests that the defendant challenged his sentence on constitutional grounds; moreover, the court proceeded to review the claim and concluded that there was "nothing illegal or improper in the action or comments of the trial judge." *Id.* at 1221. In *United States v. Draper*, 888 F.2d 1100 (6th Cir.1989), the court expressly held that a sentence within the recommended guideline range *"and otherwise valid"* was not appealable under § 3742. *Id.* at 1105 (emphasis added). On this more narrow basis, the court refused to review the defendant's challenge to the district court's refusal to depart downward in imposing his sentence. *Id.*

Nichols, in contrast to the defendants in *Sawyers* and *Draper*, argues that the district court violated his constitutional rights in sentencing him at the top of the applicable guideline range. If a district court were to sentence a defendant at the top of the recommended guideline range based solely on the defendant's race, it is inconceivable that § 3742 would preclude this court from considering an equal-protection challenge to that sentence. Likewise, because Nichols contends that consideration of the illegally seized evidence violated the Fourth Amendment, we are confident that we may properly review his claim.

**5.** All citations, *infra*, to the sentencing guidelines refer to the November, 1991 version of the guidelines.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The exclusionary rule seeks to guarantee the rights secured under the Fourth Amendment by proscribing the use of illegally obtained evidence in criminal proceedings against the victim of the illegal search and seizure. *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *see Mapp v. Ohio,* 367 U.S. 643, 657, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914). The exclusionary rule is not a personal constitutional right of the aggrieved party; rather, it is a remedial device whose primary purpose is to deter future unlawful police conduct. *Calandra,* 414 U.S. at 347, 94 S.Ct. at 613. Because, however, the exclusionary rule provides the principal means through which the guarantees of the Fourth Amendment are enforced, "[s]erious inroads on the exclusionary rule mean, as a practical matter, serious inroads on the fourth amendment." *United States v. Jewel,* 947 F.2d 224, 239 (7th Cir.1991) (Easterbrook, J., concurring).

In delineating the reach of the exclusionary rule, the Supreme Court has "examined whether the rule's deterrent effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process." *Illinois v. Krull,* 480 U.S. 340, 347, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364 (1987). In general, however, the Court has advanced cautiously in considering claims for extension of the rule. *See, e.g., INS v. Lopez–Mendoza,* 468 U.S. 1032, 1050, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984) (refusing to extend exclusionary rule to civil deportation proceedings); *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984) (permitting use of evidence seized pursuant to defective warrant where officer acted in objective good faith); *United States v. Havens,* 446 U.S. 620, 627–28, 100 S.Ct. 1912, 1917, 64 L.Ed.2d 559 (1980) (permitting use of illegally seized evidence for impeach-

ment of defendant); *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976) (permitting use of evidence illegally seized by state officials to be used in federal civil proceedings); *Calandra,* 414 U.S. at 351–52, 94 S.Ct. at 6 (refusing to apply exclusionary rule to grand jury proceedings). *But see James v. Illinois,* 493 U.S. 307, 319–20, 110 S.Ct. 648, 655–56, 107 L.Ed.2d 676 (1990) (holding that exclusionary rule prohibits use of illegally seized evidence to impeach defense witness other than defendant); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 701–02, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965) (applying exclusionary rule in proceeding for forfeiture of an article used in violation of criminal law); *Elkins v. United States,* 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960) (prohibiting use, in federal criminal proceeding, of evidence illegally seized by state officials).

This circuit has not yet resolved whether the exclusionary rule bars the consideration of illegally seized evidence at sentencing under the sentencing guidelines. A number of circuits have confronted the issue, however, and have held that evidence illegally seized by officers, although inadmissible at trial, may nevertheless be considered in determining a defendant's offense level under the guidelines. *See United States v. Tejada,* 956 F.2d 1256, 1261–62 (2d Cir.1992); *United States v. Lynch,* 934 F.2d 1226, 1236–37 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); *United States v. McCrory,* 930 F.2d 63, 69 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); *United States v. Torres,* 926 F.2d 321, 325 (3rd Cir.1991). The United States urges that this Court adopt the broad rule announced in these cases to hold that evidence illegally seized during the investigation or arrest of a defendant for the crime of conviction may be considered at sentencing. After careful consideration, we refuse to follow the rule endorsed by these courts; instead, we conclude that the exclusionary rule bars a sentencing court's reliance on evidence ille-

gally seized during the investigation or arrest of a defendant for the crime of conviction in determining the defendant's sentence under the sentencing guidelines.

This conclusion follows in part from the momentous changes in sentencing wrought by the federal sentencing guidelines. Under pre-guidelines practice, courts exercised virtually unlimited discretion in sentencing defendants within broad statutory maxima and minima. *See United States v. Tucker*, 404 U.S. 443, 446–47, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972). Furthermore, there was no guarantee that evidence not relied upon at trial would play a significant role in the district court's determination of a defendant's sentence. Consequently, law-enforcement officials had little incentive to seize evidence illegally and thereby forfeit its use at trial, merely on the vague hope that the evidence might influence the court at sentencing.

The sentencing guidelines, however, have dramatically changed the calculus of costs and benefits underlying the exclusionary rule. Given the rigid determinacy of the guidelines, state officers can often predict a defendant's sentence quite accurately regardless of the precise allegations of the count or counts upon which the defendant is convicted. Moreover, given that disputed facts at sentencing need only be established by a preponderance of the evidence, *see* U.S.S.G. § 6A1.3, comment.; *United States v. Herrera*, 928 F.2d 769, 774 (6th Cir.1991), rather than beyond a reasonable doubt, state officers now have the somewhat perverse incentive to rely more heavily on sentencing than trial to establish facts that may be of overriding importance in determining a defendant's length of imprisonment—for example, the total amount of drugs involved in a criminal scheme. As a result, sentencing has to a significant extent replaced trial as the principal forum for establishing the existence of certain criminal conduct. It therefore follows that excluding illegally seized evidence from trial but permitting its use at sentencing will result in a corresponding decrease in the deterrent effect of the exclusionary rule on unconstitutional law-enforcement practices. As stated by Judge Easterbrook of the United States Court of Appeals for the Seventh Circuit,

> [b]efore November 1987 using illegally seized evidence in sentencing could not have been called a serious inroad on the exclusionary rule. Judges based their sentences on the crimes the prosecutor had proved plus the character of the defendant. To get a steep sentence the prosecutor needed to obtain a conviction on one very serious charge or multiple less serious ones. Excluding the evidence from the case in chief was a grievous, often mortal, blow. Today prosecutors often present at trial only a small fraction of the defendant's provable conduct. The rest is reserved for sentencing.... Where once courts sentenced the offender and not the conduct, now courts sentence for crimes that were the subject of neither charge nor conviction. In proving such additional crimes, illegally seized evidence may play a central role—the same sort of role it used to play in supporting convictions on additional counts.

*Jewel*, 947 F.2d at 239–40 (Easterbrook, J., concurring).[6]

■ Notwithstanding our objection to a sentencing court's considering evidence illegally seized during the investigation or arrest of the defendant for the crime of conviction, this case presents a somewhat different scenario, one that we believe tips the balance, however slightly, in the prosecution's favor. The evidence to which Nichols objects, seized during his arrest in 1988

---

**6.** Judge Silberman of the United States Court of Appeals for the District of Columbia Circuit has made similar observations:

> If the police and prosecution know beforehand that they can get a conviction on a relatively minor offense which has a broad statutory sentencing range and that they can guarantee a sentence near the maximum by seizing other evidence illegally and introducing it at sentencing, there is nothing to deter them from seizing the evidence immediately without obtaining a warrant, especially when a conviction on a "greater" crime would lead to a similar sentence.

*McCrory*, 930 F.2d at 71 (Silberman, J., concurring).

on state drug charges, involved conduct unrelated to that for which Nichols was convicted in this case. We base this characterization on the fact that the events surrounding Nichols' 1988 arrest were so remote as to not fall within the sentencing guidelines' relevant conduct provisions. *See* U.S.S.G. § 1B1.3.[7] Given the discrete nature of the two arrests and the conduct on which they were based, we conclude that excluding the evidence from sentencing on the subsequent conviction would not sufficiently further the purposes of the exclusionary rule to justify barring its use at sentencing. As stated above, the exclusionary rule seeks to deter police conduct that violates the Fourth Amendment. A rule prohibiting the consideration of illegally seized evidence during the sentencing phase of a conviction on a subsequent and unrelated crime arguably would provide only limited deterrence to unconstitutional law-enforcement practices. Application of the exclusionary rule to the facts of this case would necessarily require the inference that, absent the rule, police would have an incentive to seize evidence illegally *solely* on the expectation that the evidence might be used in sentencing the defendant for a subsequent crime. Given the prophylactic purpose of the exclusionary rule, as well as the Supreme Court's overly restrictive interpretation of the rule, we find ourselves obliged to conclude that such an inference is simply too frail to support application of the exclusionary rule in this instance. Although we are troubled that the result we reach today may give insufficient weight to the valuable rights enshrined in the Fourth Amendment, we nevertheless feel compelled to hold that, where evidence is illegally seized in relation to conduct that does not fall within the relevant conduct provisions of the sentencing guidelines, and the district court does not otherwise rely on the evidence in determining the defendant's sentence, the court may consider such evidence in determining

where to sentence the defendant within the recommended guideline range.[8]

## IV

■ Nichols next challenges the district court's decision to increase his offense level by two levels for possession of a firearm, pursuant to section 2D1.1(b)(1) of the guidelines. *See* U.S.S.G. § 2D1.1(b)(1). Nichols pleaded guilty to conspiracy to possess cocaine with intent to distribute, an offense punishable under guidelines' section 2D1.4. *See id.* § 2D1.4. That section incorporates by reference section 2D1.1, *see id.* comment. (n. 3), which provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels," *id.* § 2D1.1(b)(1). This court has consistently held that possession of a firearm under section 2D1.1(b)(1) "is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct." *United States v. Williams,* 894 F.2d 208, 211 (6th Cir.1990); *accord United States v. Tisdale,* 952 F.2d 934, 938 (6th Cir.1992) (citing *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)).

Although Nichols concedes that his co-conspirator, Harkins, possessed a firearm during the commission of the offense, he insists that Harkins' decision to carry a firearm to the drug transaction was not reasonably foreseeable. Harkins, however, offered undisputed testimony that he asked Nichols immediately prior to the deal whether he should carry a gun with him, and that Nichols advised him to do whatever he wished. The evidence also indicated that Nichols purchased a number of firearms from Harkins in the months preceding his arrest, and that these firearms were linked to Nichols' and Harkins' drug trafficking activities. While this evidence might be insufficient to establish actual knowledge, section 2D1.1 does not demand

---

**7.** We also note that the district court did not consider Nichols' 1988 arrest and the ensuing state court proceedings to adjust his criminal-history score pursuant to U.S.S.G. § 4A1.3(d) or (e).

**8.** Given our conclusion that the district court did not err in considering the challenged evidence, we need not address the contention, advanced by the United States, that the evidence was, in fact, legally seized.

*scienter.* Harkins' testimony was sufficient to support the court's finding that Harkins' firearm possession was reasonably foreseeable; the sentencing guidelines demand no more. Because a preponderance of the evidence supported the district court's findings in this regard, we affirm the increase in Nichols' sentence for possession of a firearm during the commission of the offense.

### V

▮ Nichols also claims that the district court erred in counting five kilograms of cocaine involved in a prior, uncompleted transaction in setting his base offense level. As set out in Part I, *supra*, Harkins first came into contact with undercover law-enforcement agents concerning a possible cocaine deal in early 1990. After Harkins priced the cocaine at $20,000 per kilogram, he and Nichols agreed to attempt to purchase five kilograms from the agents for $100,000. Prior to the deal, Nichols displayed a large amount of cash to Harkins and alleged that it was enough to cover the deal. When the agents refused to allow Harkins to take one kilogram to Nichols for testing without paying for it, Harkins telephoned Nichols, who told Harkins to call off the deal. In September of 1990, Nichols and Harkins agreed to recontact the agents. Their attempt, at that time, to purchase three kilograms of cocaine from the agents formed the basis for the present conviction.

▮ Section 1B1.3(a) of the guidelines provides that the base offense level "shall be determined on the basis of ... (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a), (a)(2); *see also id.* § 3D1.2(d) (requiring grouping of counts "[w]hen the offense level is determined largely on the basis of," *inter alia*, "the quantity of a substance involved"). The commentary to section 1B1.3 clarifies that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd); *see also id.* § 2D1.1, comment. (n. 12) ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."); *United States v. Miller,* 910 F.2d 1321, 1326–27 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). The operative provision in this case is section 2D1.4, which provides, in relevant part, as follows:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

U.S.S.G. § 2D1.4, comment. (n. 1). The district court determined that the earlier transaction constituted relevant conduct for which Nichols was accountable under the guidelines. We review a district court's determination that conduct is relevant to the offense of conviction for clear error. *See United States v. Silverman,* 889 F.2d 1531, 1539 (6th Cir.1989).

Nichols raises two challenges to the district court's decision. First, Nichols argues that the earlier transaction, occurring approximately three months prior to the transaction underlying his conviction, cannot be construed as "part of the same course of conduct or common scheme or plan" as the subsequent transaction that was interrupted by his and Harkins' arrest. We disagree. In *Miller,* we upheld the district court's reliance on drug quantities involved in a conspiracy spanning twenty months in setting the defendant's offense level, despite the fact that the count of

conviction alleged a conspiracy extending over only three months. 910 F.2d at 1327. In affirming the court's finding that the uncharged distributions constituted relevant conduct, we noted that the sentencing guidelines require that "the entire quantity of cocaine attributable to a distribution enterprise must be used to establish the base offense level of a conspirator in the undertaking." *Id.; see also United States v. Hodges*, 935 F.2d 766, 772 (6th Cir.) (holding that district court must consider all drug quantities sold during the lifetime of the conspiracy), *cert. denied*, — U.S. —, —, 112 S.Ct. 251, 317, 116 L.Ed.2d 206, 259 (1991). In the instant case, the disputed transaction involved the same parties (Harkins and Nichols), the same substance (cocaine), and the same objectives (the purchase of kilogram quantities of cocaine) as the transaction for which Nichols was convicted. On these facts, the district court's conclusion that the earlier transaction was part of the same course of conduct as the subsequent transaction was not clearly erroneous.

Nichols also contends that the earlier transaction should not be counted because he decided to call off the deal prior to its consummation. The commentary to section 2D1.4, however, makes clear that an amount involved in an earlier transaction should be counted unless "the defendant did not intend to produce *and* was not reasonably capable of producing the negotiated amount." U.S.S.G. § 2D1.4, comment. (n. 1) (emphasis added); *see also United States v. Gonzales*, 929 F.2d 213, 216 (6th Cir.1991) (under section 2D1.4, "'the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total amount in order to determine the base level'") (quoting *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989)). Nichols arranged with Harkins to purchase, and clearly intended to purchase, five kilograms of cocaine from the undercover agents. His goal was frustrated only when the agents refused to allow Harkins to leave with one kilogram for testing without paying for it. Moreover, Nichols' rep-

resentation to Harkins that he had enough cash to purchase the cocaine supports the conclusion that Nichols was capable of producing the funds for the negotiated amount. Accordingly, we are satisfied that the district court's determination that the earlier transaction constituted relevant conduct was not clearly erroneous. Nichols' remaining objections to the relevant conduct provisions are without merit.

## VI

 As a final matter, Nichols maintains that the district court erred in refusing to grant him a two-level reduction under section 3E1.1 of the guidelines for acceptance of responsibility. A reduction under section 3E1.1 is proper "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Acceptance of responsibility is a factual determination left to the sound discretion of the district court, and the court's determination on this issue is not to be disturbed unless clearly erroneous. *United States v. Williams*, 940 F.2d 176, 181 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991).

At the sentencing hearing, Nichols denied involvement in Harkins' attempt to purchase the five kilograms of cocaine in the Spring of 1990, despite persuasive evidence to the contrary. On that basis, the district court concluded that Nichols' admission of guilt was "less than complete." J.A. at 254. Upon review, we find nothing in the record to suggest that the district court's determination was clearly erroneous.

## VII

The sentence imposed by the district court is AFFIRMED.

DAVID A. NELSON, Circuit Judge, concurring in judgment.

In Part II of his opinion, Judge Jones presents a very cogent explanation of his reasons for thinking that our sister circuits

have erred in failing to read *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), as proscribing the use, for Sentencing Guidelines purposes, of prior "uncounseled" misdemeanor convictions not resulting in incarceration. It seems to me, however, that Judge Jones' real quarrel is not with the other circuits for misreading *Baldasar*, but with Justice Blackmun for not joining Justices Brennan and Stevens in concurring with Justice Marshall.

Because the rationale of the separate opinion filed by Justice Marshall was not endorsed by a majority of the justices, I believe that the reading which the other courts of appeals have given the *Baldasar* decision is correct. I am authorized to state that Judge Lively agrees, and Part I of the following opinion thus represents the opinion of the court on this issue.

### I

■ The precise question presented to the Supreme Court in *Baldasar* was whether the misdemeanor conviction of an offender who did not have a lawyer and who was not incarcerated "may be used *under an enhanced penalty statute* to convert a *subsequent misdemeanor* into a *felony* with a prison term." 446 U.S. at 222, 100 S.Ct. at 1585 (emphasis supplied).

Four members of the Supreme Court concluded that such a conviction may be used to convert a subsequent misdemeanor into a felony, while five members of the Court concluded that it may not be so used. If all five members of the majority had concurred in the reasoning set forth by Justice Marshall in his separate opinion, the logic of *Baldasar* might require us to hold, in the case at bar, that defendant Nichols' "uncounseled" DUI conviction[1] could not be used in determining the sentence for his felony cocaine conviction.

The problem, of course, is that Justice Marshall's reasoning did not command the support of a majority of the court—and the "reach" that *Baldasar* has as a precedent obviously depends on the reasoning that led each member of the majority to vote to reverse the judgment of the lower court.

Justice Blackmun, who provided the critical fifth vote in favor of reversal, made it very clear why he voted as he did: adhering to the view expressed in his dissent in *Scott v. Illinois*, 440 U.S. 367, 389–90, 99 S.Ct. 1158, 1170, 59 L.Ed.2d 383 (1979), Justice Blackmun felt that because Mr. Baldasar's prior misdemeanor was punishable by more than six months' imprisonment, and because Baldasar was not represented by an attorney at the time of his conviction, the conviction was simply "invalid." Being invalid, in Justice Blackmun's view, the conviction "may not be used to support enhancement." *Baldasar*, 446 U.S. at 230, 100 S.Ct. at 1589 (separate concurrence of Blackmun, J.) This is Justice Blackmun's only stated reason for concurring in the Court's decision to reverse.

Unlike Justices of the Supreme Court, the members of this court are not free to pick and choose among Supreme Court precedents, following those they like and rejecting those they do not like. Supreme Court precedent that is binding on this court requires that we treat defendant Nichols' DUI conviction as constitutionally valid. *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). And because the DUI conviction was valid, it can be used for any legitimate purpose—including sentence enhancement—as far as the logic of Justice Blackmun's opinion is concerned.

Our own court, indeed, has held that "evidence of prior uncounselled misdemeanor convictions for which imprisonment was not imposed [ ] may be used for im-

---

1. In point of fact, Mr. Nichols may well have waived his right to counsel in the DUI proceeding; he told the probation officer who prepared the presentence report here "that he had contacted an attorney and had been informed by that attorney that he did not need to be represented at the hearing, since he would be pleading nolo contendere." Stating that "[t]he proof is unclear as to whether he may have validly waived his right to counsel," the district court determined, on the basis of the facts before it, that there was no valid waiver. *United States v. Nichols*, 763 F.Supp. 277, 278 (E.D.Tenn.1991). I do not question the propriety of this determination as a legal matter, but would note that it may be incorrect as a factual matter.

peachment purposes." *Charles v. Foltz,* 741 F.2d 834, 837 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985), citing *Wilson v. Estelle,* 625 F.2d 1158, 1159 (5th Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1985, 68 L.Ed.2d 302 (1981). If defendant Nichols had chosen to go before a jury on the felony drug charges, therefore, *Charles v. Foltz* shows that the jury could have considered his prior DUI conviction in determining whether Mr. Nichols was guilty or innocent. That being so, it strikes me as anomalous, to say the least, that a judge should not be allowed to consider the prior DUI conviction in determining what sentence to impose once guilt has been established.

The anomaly comes into sharper focus, perhaps, when we observe that the statute governing the case at bar makes it mandatory that the sentencing court impose "a term of imprisonment which may not be less than 10 years and *not more than life....*" 21 U.S.C. § 841(b)(1)(B) (emphasis supplied). In *Baldasar,* as Justice Marshall was careful to point out, "[t]he sentence [Mr. Baldasar] actually received would not have been authorized by statute but for the previous conviction." 446 U.S. at 227, 100 S.Ct. at 1587. In the present case, by contrast, a sentence of up to life imprisonment would have been authorized by statute whether or not there was a previous DUI conviction in defendant Nichols' record.[2]

In *Wilson v. Estelle* (the Fifth Circuit decision that was followed by our court in *Charles v. Foltz*) the Fifth Circuit expressed itself as follows:

> "We find no error in the admission of the evidence as to Wilson's prior [uncounseled] misdemeanor conviction.... For this conviction Wilson was not imprisoned. It is well settled that the Sixth and Fourteenth Amendments do not require the state to afford counsel to an indigent criminal defendant in those misdemeanor cases in which the offender is

not imprisoned. *Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162–1163, 59 L.Ed.2d 383, 388–389 (1979). Furthermore, this court in *Griffin v. Blackburn,* 594 F.2d 1044 (5th Cir.1979) held that evidence of prior uncounseled misdemeanor convictions for which imprisonment was not imposed may be used for impeachment purposes and opened the door for other uses of such evidence as well:

> Logically, if a conviction is valid for purposes of imposing its own pains and penalties—the 'worst' case—it is valid for all purposes.

594 F.2d at 1046. [Footnote ("But *cf. Baldasar v. Illinois....*") omitted.] We see no compelling reason for placing a special exclusion on the introduction of such evidence at the punishment stage of a trial." *Wilson v. Estelle,* 625 F.2d at 1159.

The logic employed by the Fifth Circuit in *Wilson v. Estelle* and by this court in *Charles v. Foltz* would seem to compel the conclusion that a prior uncounseled misdemeanor conviction that did not result in imprisonment may be used in calculating a defendant's criminal history category under the Sentencing Guidelines. And that is exactly the conclusion reached by the Fifth Circuit in *United States v. Eckford,* 910 F.2d 216 (5th Cir.1990). Recognizing that it was "bound by prior Circuit precedent," *id.* at 217, the court there affirmed a sentence at the top of a guideline range determined by reference to two prior uncounseled misdemeanor convictions that had not resulted in imprisonment. Following *Wilson v. Estelle,* and notwithstanding *Baldasar,* the *Eckford* court made these observations:

> "The inconsistency between Justice Blackmun's narrow approach and Justice Marshall's expansive approach has clouded the scope of the *Baldasar* decision. Many courts have questioned whether *Baldasar* expresses *any* persuasive au-

---

**2.** Under the Sentencing Guidelines, it is true, the sentencing court could not have imposed a sentence outside a range of 168–210 months, absent the DUI conviction, unless the court made find-

ings sufficient to support a "departure" under 18 U.S.C. § 3553(b). Examination of the record in this case suggests that such a departure might well have been warranted.

thority on the collateral use of uncounseled misdemeanor convictions. *See, e.g., Schindler v. Clerk of Circuit Court,* 715 F.2d 341, 345 (7th Cir.1983) ('the [*Baldasar*] decision provides little guidance outside of the precise factual context in which it arose.'), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984); *United States v. Robles–Sandoval,* 637 F.2d 692, 693 n. 1 (9th Cir.) ('The court in *Baldasar* divided in such a way that no rule can be said to have resulted.'), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981)." *United States v. Eckford,* 910 F.2d at 219 (footnotes omitted).

In *Wilson v. Estelle,* the Fifth Circuit explained, *Baldasar* had "essentially [been] limited ... to its particular factual scenario: 'a prior uncounseled misdemeanor conviction may not [be] used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term.'" *Eckford,* 910 F.2d at 220, quoting *Wilson v. Estelle,* 625 F.2d at 1159 n. 1. The *Eckford* court went on to observe that subsequent opinions had reinforced *Wilson:*

> "In *Thompson v. Estelle,* 642 F.2d 996 (5th Cir. Unit A 1981), we again concluded that 'evidence of a prior uncounselled misdemeanor conviction for which no imprisonment was imposed may properly be introduced in the punishment phase of a trial.' *Id.* at 998. In *United States v. Smith,* 844 F.2d 203 (5th Cir.1988), we held that a sentencing court could consider the defendant's numerous prior uncounseled convictions, none of which resulted in imprisonment." *Eckford,* 910 F.2d at 220.

"[I]n the absence of reconsideration en banc," *Eckford* concluded, "this Court is not empowered to disturb our prior reasoned decisions that *Baldasar v. Illinois* does not preclude the use of uncounseled misdemeanor convictions during sentencing for a subsequent criminal offense." *Id.* (footnote omitted).

In *United States v. Castro–Vega,* 945 F.2d 496 (2d Cir.1991), *petition for cert. filed* (Jan.1992), similarly, the Court of Appeals for the Second Circuit—which apparently had no prior precedents comparable to *Wilson v. Estelle* or our own *Charles v. Foltz* decision—held, in a carefully reasoned opinion, that it is not unconstitutional to count prior uncounseled misdemeanor convictions with no incarceration in calculating a defendant's criminal history category under the Sentencing Guidelines. The Second Circuit noted that the Sentencing Commission, in its Background Comment on Guideline § 4A1.2 (1990 ed.), had stated explicitly that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, *including uncounseled misdemeanor sentences where imprisonment was not imposed.*" 945 F.2d at 499 (emphasis added by the Second Circuit).[3] Analyzing *Baldasar* in the same way the Fifth Circuit and others had done earlier, the Second Circuit found that "no common denominator ... upon which all of the Justices in the *Baldasar* majority agreed" could be considered applicable in the case before it. 945 F.2d at 499–500.

In further explanation of its holding that prior uncounseled misdemeanor convictions may be used in the manner directed by the Sentencing Guidelines, the Second Circuit said this:

> "The problem posed in this case—calculating a defendant's criminal history by relying in part on a prior uncounseled misdemeanor conviction—is different from the situation in *Baldasar*. In *Baldasar*, the defendant's prior conviction materially altered the substantive offense for which he could be held criminally responsible by converting it from a misdemeanor to a felony with a prison

---

**3.** As originally proposed by the Sentencing Commission, the Comment would have stated explicitly that "[t]he Commission does not believe the inclusion of sentences resulting from constitutionally valid, uncounseled misdemeanor convictions in the criminal history score is foreclosed by *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980)." 55 Fed.Reg. 5718, 5741 (Feb. 16, 1990). The reference to *Baldasar* was dropped in the final version of the Comment, but that version obviously could not have been adopted without adherence to the view expressed in the Federal Register notice.

term—an offense that on its own would trigger a right to counsel. In the instant case, the court used an uncounseled misdemeanor conviction to determine the appropriate criminal history category for a crime that was already a felony. *See id.*

\* \* \* \* \* \*

In the absence of any clear direction from the Supreme Court, and given the narrowness of the *Baldasar* holding, we decline to extend *Baldasar* to this case." 945 F.2d at 500.

Agreeing with the conclusion reached by our sister circuits—a conclusion that is logically compelled, as I see it, by our own prior holding in *Charles v. Foltz*—I would affirm the judgment of the district court insofar as the use of defendant Nichols' "uncounseled" DUI conviction is concerned.

## II

Although I agree with the conclusion of my colleagues that the district court did not err in considering the evidence which the state police officers found in defendant Nichols' pickup truck and on his person—evidence consisting of cocaine, loaded weapons, false-bottom oil cans, and $2,800 in cash—I prefer not to join in some of the *dicta* that accompany the court's announcement of this conclusion. Our disposition of this appeal makes it unnecessary to say, for example, whether we agree or disagree with the "broad rule" that other Courts of Appeals have adopted with respect to the use at sentencing of evidence inadmissible at trial.[4] And whatever our individual views may be on the merits of the "interpretation" of the exclusionary rule that the Supreme Court has fashioned over the past

four decades, the Court clearly does not view its rule as being "embedded" in the Fourth Amendment's proscription of unreasonable searches and seizures. See, *e.g., United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974) (the exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved"); *United States v. Janis*, 428 U.S. 433, 459, 96 S.Ct. 3021, 3034, 49 L.Ed.2d 1046 (1976); *Elkins v. United States*, 364 U.S. 206, 216–17, 80 S.Ct. 1437, 1443–44, 4 L.Ed.2d 1669 (1960). For these reasons, among others, I do not concur in Part III of Judge Jones' opinion. I do concur in Parts I, IV, V, and VI.

---

**4.** Courts that have been required to decide this issue have usually been careful not to address issues not raised by the facts of the case before them. In *United States v. Lynch*, 934 F.2d 1226, 1237 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992), for example, where a panel consisting of Justice Powell, Chief Judge Tjoflat and Judge Kravitch "decline[d] to extend the exclusionary rule to sentencing proceedings," Chief Judge Tjoflat's opinion added this note:

"We do not address—because the facts of this case do not raise the issue—whether the

exclusionary rule should apply in sentencing proceedings to evidence unconstitutionally seized solely to enhance the defendant's sentence. *See Verdugo v. United States*, 402 F.2d 599, 610–13 (9th Cir.1968), *cert. denied,* 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971). In that situation, it may be that the exclusionary rule's rationale can be served only by excluding the illegally seized evidence from consideration at sentencing." *Lynch*, 934 F.2d at 1237 n. 15.