**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rafael HERRERA,**
**Defendant–Appellant.**

**No. 90–3196.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1991.

Decided March 25, 1991.

Rehearing and Rehearing En Banc
Denied May 7, 1991.

Robert Brichler, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Judith A. Halprin (argued), Chicago, Ill., for defendant-appellant.

Before MARTIN and KRUPANSKY, Circuit Judges, and LIVELY, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Rafael Herrera raises three issues on appeal: (1) did the United States breach the plea agreement when it informed the probation office of the quantities of drugs involved in the case beyond those incorporated into the amended superceding indictment; (2) did the district court err in relying upon information in the pre-sentence report given by an informant who Herrera asserts is unreliable; (3) did the district court make the required finding of fact under Fed.R.Crim.P. 32(c)(3)(D) or err in the application of Federal Sentencing Guidelines §§ 1B1.3(a)(1), 1B1.1(c), or 3E1.-1. For the following reasons, we affirm the judgment of the district court.

On August 3, 1989, a superceding indictment was filed charging Rafael Herrera and Miguel Abrego with various offenses involving the distribution of marijuana, cocaine, and heroin. Herrera reached a plea agreement with the United States on October 2, 1989, and entered a guilty plea later that same day. The plea agreement explicitly stated that there was no agreement as to the ultimate sentence and that he could receive "the maximum penalty provided by law." The count to which Herrera pled guilty limited the span of the conspiracy to distribute to eleven days, substantially down from the two years in the earlier indictment. Herrera asserts that the purpose of this was to limit the quantities of drugs which the court could consider in determining the sentence. The United States responds that there was never a promise to withhold these facts from the probation officer. Herrera's counsel attempted to refute this assertion by introducing affidavits of the counsel of co-defendants who were present during the plea bargain negotiations and by giving his own testimony. Herrera's counsel and one affidavit state that the express purpose of limiting the time frame of the conspiracy was to limit the amount of narcotics involved. A second affidavit states that the limiting of the amount of narcotics involved was not only the purpose behind the limitation on the period of the conspiracy covered

by the indictment but was also specifically agreed to in and of itself. Herrera asserts that the plea agreement was hastily prepared and the reason there was not a specific offense level stated in the agreement was due to a conflict between him and the government concerning both the "role in the offense" adjustment and the "acceptance of responsibility" adjustment. After considering the affidavits and the testimony of the United States Attorney, the district court stated "the issue before the court is whether the probation department could go outside the conspiracy and the weights that are listed in the [indictment]." The district court then heard Herrera's counsel's version of the plea negotiations. The district court analyzed the disputed information under Ohio contract law, noting that a specific agreement must be arrived at and that the evidence has to be clear and convincing as to that agreement. It further noted that under the parol evidence rule the written document reflects the binding agreement of the parties. Ultimately, the district court rejected Herrera's assertion concerning the existence of a separate agreement that no amounts of narcotics beyond those included in the superceding indictment were to be included in the government's version of the offense as reported to the probation office.

Herrera also objected to the district court's acceptance of a portion of the presentence report relating to information taken from an informant who Herrera asserts is unreliable. The district court rejected this argument, expressly finding the informant to be sufficiently reliable. Lastly, Herrera argued that he was not a leader or organizer of the drug group and that he did accept responsibility for the conspiracy. The court rejected both of these assertions.

Using the pre-sentence report, the judge arrived at a base offense level of 36 under the Guidelines. The court then found that Herrera was a leader or organizer in a criminal activity and increased his base offense two levels to 38. Because the court found that Herrera had a criminal history category of I, the applicable guideline range was 235 to 293 months with a term of supervised release of five years. The court sentenced Herrera to imprisonment for twenty years and Herrera timely filed this appeal.

In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court stated, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement for consideration, such a promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. The language of *Santobello* has established the principle that a plea bargain is contractual in nature. *See United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979); *Petition of Geisser*, 554 F.2d 698, 704 (5th Cir.1977). The Supreme Court in *Santobello* used terminology which rests at the core of contract law: "mutually binding promises freely given in exchange for valid consideration." *United States v. Bridgeman*, 523 F.2d 1099, 1109–10 (D.C.Cir.1975), *cert. denied sub nom. Johnson v. United States*, 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976). In *Baker v. United States*, 781 F.2d 85 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986), this circuit stated:

> It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, "a plea bargain itself is contractual in nature and 'subject to contract law standards.'" To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court....

*Id.* at 90 (citation omitted). We have also stated that the trial court should look to what the defendant reasonably understood when he entered the plea agreement in order to determine whether the agreement

has been broken. *United States v. Mandell*, 905 F.2d 970 (6th Cir.1990). Along similar lines in *United States v. Harvey*, 791 F.2d 294 (4th Cir.1986), the Fourth Circuit noted:

> Both constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements. *See, e.g., United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978) (plea agreement not appropriate context for "rigidly literal" construction of language); *Palermo v. Warden*, 545 F.2d 286, 295 (2d Cir.1976) (government invocation of restrictive contract principles "disingenuous"); *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976) (government's "strict and narrow interpretation of its commitment ... untenable"); *Correale v. United States*, 479 F.2d 944, 947 (1st Cir.1973) (government held to "meticulous standards of both promise and performance").

*Id.* at 300–301.

Herrera relies upon *United States v. Tobon–Hernandez*, 845 F.2d 277 (11th Cir.1988); *United States v. Nelson*, 837 F.2d 1519 (11th Cir.), *cert. denied sub nom. Waldhart v. United States*, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988), and *In Re Arnett*, 804 F.2d 1200 (11th Cir.1986). However, reliance upon these cases is misplaced because in each of these cases there is a specific reference in the plea agreement to the fact in contention or an acknowledgment by the government that the facts were in some way being limited. The agreement between Herrera and the government was read in open court and the record reflects that the district court followed the procedures set forth in FED.R. CRIM.P. 11. After discussing the plea agreement with Herrera, the following exchange between the court, the Assistant United States Attorney, the defendant, and the defendant's attorneys took place:

> THE COURT: Now, I'll inquire of the United States Attorney, Mr. Brichler, the defense counsel, Miss Cook and Mr. Rascia, as well as Mr. Herrera, as to the plea negotiations in this case.
>
> MR. BRICHLER: Your Honor, there's a written plea agreement in this matter.... The substance of the agreement is as follows: It is agreed between Mr. Herrera and the United States Attorney that he will plead guilty to Count I of the indictment as amended, which charges him with conspiracy to distribute cocaine, heroin and marijuana. The defendant understands the punishment prescribed by law as previously outlined by the court.
>
> In return for the defendant's plea of guilty and admission of guilt, the United States agrees to dismiss the remaining counts of the indictment. The defendant understands that there is no agreement concerning his ultimate sentence, as that determination is the sole discretion of the district court and he could receive the maximum penalty provided by law. He has also agreed to pay a $50.00 assessment also required by law. And there is a paragraph indicating that the plea agreement was interpreted in Spanish to Mr. Herrera. It's signed by myself, by Mr. Herrera, and Mr. Rascia, dated this morning, 10/2/89.
>
> THE COURT: Mr. Herrera is that your understanding of the plea agreement?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And Mr. Rascia, is that your understanding of the plea agreement?
>
> MR. RASCIA: Yes, it is.
>
> THE COURT: And Miss Cook, is that your understanding?
>
> MISS COOK: Yes, it is.

At this crucial moment, neither Herrera nor his attorneys let the court know of the additional terms in the plea agreement they now allege. Like the defendant in *Baker*, Herrera or his attorneys had to at least mention any additional terms when asked about their understanding of the plea agreement by the court. As we ruled in *Baker*, secret terms would make it impossible for the trial judge to administer a plea agreement, and permitting affidavits to prove "that the agreement is otherwise

than it appears, unambiguously, on a thorough record would violate established contract law standards." *Baker*, 781 F.2d at 90.

Herrera does not assert that the written agreement is ambiguous; his claim rests upon the existence of a separate agreement not set forth in the written agreement shown to the court. The existence of such an agreement is a question of fact. *Id.*; *United States v. Fry*, 831 F.2d 664, 667 (6th Cir.1987). The district court received all of Herrera's evidence concerning the alleged agreement and listened to the United States Attorney's denial of its existence. The court then found that a separate agreement did not exist. There is no evidence to establish that this is clearly erroneous.

 The district court stated at the sentencing proceeding that under Ohio contract law the evidence has to be "clear and convincing" as to the existence of a separate agreement. Although the plea agreement is contractual in nature, it is by no means an ordinary contract. It is not a document that can be interpreted under state contract law. Federal plea agreements must be governed by the Constitution and federal law, otherwise identical agreements would be subject to different interpretations depending upon which state rule was being applied. Thus, the district court was in error when it assumed that Ohio law provided the standard for determining whether a separate agreement existed. However, that error was harmless. Given this circuit's decision in *Baker*, the clear and convincing standard applied by the district court is correct in cases, such as this one, where the defendant is asked by the court whether the written plea is the agreement between himself and the government and the defendant fails to notify the court at that time of a separate, unwritten plea. *See Baker*, 781 F.2d at 90.

 Herrera also asserts the district court erred by relying upon information incorporated into the pre-sentence report which was provided by an allegedly unreliable witness. The probation officer asserted that the informant had provided detailed information on the automobile used to transport the cocaine and the informant warned the government that kilogram quantity deliveries of cocaine and heroin could be delivered by her Chicago source, an allegation which was corroborated by the occurrence of such a delivery soon after her warning. The court explicitly stated: "my ruling as to the reliability of the informant ... I find that there is such indicia of reliability."

In *United States v. Smith*, 887 F.2d 104, 108 (6th Cir.1989), we stated:

We note that due process requires that *some* evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing. "[A]s a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability beyond mere allegation." *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir.1982); *see also Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959). This due process limit on the evidence a sentencing court may properly consider is recognized in the commentary to § 6A1.2 of the guidelines, which provides:

In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has *"sufficient indicia of reliability to support its probable accuracy."* Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." Unreliable allegations shall not be considered.

*Guidelines Manual* at 62. (1987) (citations omitted; emphasis added).

In this case, an identified informant provided both a warning of a possible delivery involving large amounts of cocaine and heroin and details of the delivery automobile. This information was corroborated by the

actual occurrence of the delivery. This satisfies the "minimal indicia of reliability beyond mere allegation" required by the *Smith* decision. Accordingly, the district court did not err by relying upon information incorporated into the presentence report provided by the informant.

■ Herrera next alleges the court failed to make the findings of fact required by FED.R.CRIM.P. 32(c)(3)(D). This circuit in *United States v. Mandell,* 905 F.2d 970 (6th Cir.1990), stated "[a] defendant demanding a resentencing due to a violation of Rule 32(c)(3)(D) needs only to show that '(1) allegations of inaccuracy were before the sentencing court and (2) the court failed to make findings regarding the controverted matters or a determination that the disputed information would not be used in sentencing.'" *Id.* at 973 (citation omitted). In *Mandell* we stated, "[i]f silence and imposition of a sentence obviously based on the disputed allegations in the pre-sentence report constituted an express finding, there would be no reason for the requirement of an express finding." *Id.* at 974.

Herrera alleges three factual inaccuracies were brought to the attention of the district court, which failed to make the required findings of fact on those issues. The record shows these allegations are without merit. First, Herrera asserts the court failed to make the required finding with respect to the informant's reliability. As noted above, the court ruled, "I find there is such indicia of reliability." Second, Herrera asserts the court failed to make the required finding with respect to the dispute concerning his role in the offense. The court stated, "[m]y impression was he was a supplier of substantial quantities of narcotics in the Cincinnati area," and "[t]he court finds that the defendant was a leader or organizer in criminal activity...." Lastly, Herrera asserts the court failed to make the required finding with respect to the dispute concerning his acceptance of responsibility. The court first asked, "Why should the court grant a two-level decrease for acceptance of responsibility?" Immediately after hearing Herr-

era's counsel on this point, the court stated, "[w]ith regard to the objections that have been raised ... I'm going to deny the objections." These explicit statements by the court on each disputed issue, following complete arguments on each issue, satisfies the language of Rule 32(c)(3)(D) and our holding in *Mandell.*

Lastly, Herrera alleges the district court erred in the application of three Guidelines' provisions. First, he asserts the court erred in its determination of relevant conduct under Guidelines § 1B1.3(a)(1) by accepting as relevant his conduct outside the specific dates of the conspiracy acknowledged in his plea agreement, dates which reflect those set forth in the amended superceding indictment. This issue has already been resolved against Herrera by this circuit in *United States v. Smith,* 887 F.2d 104 (6th Cir.1989), where we held that conduct beyond that alleged in the indictment may be considered as long as there is a minimum indication of its reliability: "[a]ny information may be considered, so long as it has *'sufficient indicia of reliability to support its probable accuracy.'*" *Id.* at 108 (citation omitted).

■ Second, Herrera asserts the court erred in determining he was a leader or organizer of criminal activity. *Guidelines Manual,* § 3B1.1(c). "The preponderance of the evidence standard applies to contested facts in the sentencing proceedings." *United States v. Silverman,* 889 F.2d 1531, 1535 (6th Cir.1989) (citations omitted). The district court heard evidence from both Herrera and the United States on Herrera's role in the conspiracy. Based on the informant's information and the size and speed of deliveries involved, we find the lower court's factual determination is not clearly erroneous. *Baker,* 781 F.2d at 90.

■ Third, Herrera asserts the court erred in ruling that he failed to accept responsibility for the conspiracy. *Guidelines Manual,* § 3E1.1. Herrera accepted responsibility only for the drugs listed in the indictment. Because of the much larger amount of drugs found by the district court through information provided by an informant the court was not clearly errone-

ous in finding Herrera failed to accept responsibility for his offense.

For the foregoing reasons, we affirm the judgment of the district court.