**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Randall GRAY, Defendant–Appellant.**

**No. 92–3179.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1992.

Decided Jan. 12, 1993.

Robert Brichler, Asst. U.S. Atty., Cincinnati, OH (argued), for plaintiff-appellee.

R. Scott Croswell, III (briefed), Elizabeth E. Agar (argued), Croswell & Adams, Cincinnati, OH, for defendant-appellant.

Before: KEITH, KENNEDY, and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant Randall Gray, who pled guilty to selling drug paraphernalia, appeals his sentence which includes an upward departure from the federal sentencing guidelines. Since we find that the district court considered inappropriate factors in making the upward departure, and did not adequately justify potentially appropri-

ate ones, we vacate the sentence and re-mand for resentencing.

## I. The Case

In July 1990, a Drug Enforcement Agency task force officer began an investigation of a cocaine distribution ring in the Cincinnati area. During the course of this investigation, the officer became aware that a cocaine dealer was obtaining lidocaine hydrochloride, a non-controlled substance commonly used to "cut" (i.e., adulterate) cocaine, from Gray. On May 8, 1991, federal agents, pursuant to a search warrant, seized approximately $61,000 in cash from Gray's place of business which Gray admitted to be proceeds from the sale of lidocaine hydrochloride to a cocaine dealer or dealers. This amount reflects the sale of approximately fifty kilograms of lidocaine hydrochloride, which would be used as a cutter to yield about 100 kilograms of marketable cocaine. Gray admits knowledge that the lidocaine hydrochloride was used to adulterate cocaine for human consumption. In addition to the cash seized, Gray agreed to forfeit drug paraphernalia located at his place of business.

Gray was indicted on May 15, 1991, on one count of conspiracy to unlawfully possess cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1988). The government later sought dismissal of this indictment in exchange for a guilty plea to one count of selling drug paraphernalia, in contravention of 21 U.S.C. § 863 (Supp. II 1990). This plea was accepted by the district court on June 28, 1991.

In preparing the presentence report, the probation officer noted that no specific federal sentencing guideline applied to a violation of 21 U.S.C. § 863. In such a case as this, the United States Sentencing Commission's *Guidelines Manual*, appendix A (Nov.1990) [hereinafter *Guidelines*], directs that the "most analogous guideline is to be applied." *See also Guidelines* § 2X5.1. The probation officer chose *Guidelines* § 2D1.7 (Unlawful Sale or Transportation of Drug Paraphernalia) as the most analogous guideline. This guideline calls for a base offense level of twelve.

After subtracting two levels for acceptance of responsibility, and incorporating the appropriate criminal history category, the probation officer determined the guideline imprisonment range to be six to twelve months.

The district court judge accepted the guideline chosen by the officer as being the appropriate guideline for this case. However, on February 7, 1992, the judge departed upward from the guideline imprisonment range by sentencing Gray to thirty months of imprisonment (along with one year of supervised release after imprisonment). His explanation for departure as recorded on the judgment entry is as follows:

> The defendant's involvement in this offense appears to have been motivated purely by greed. His participation, however, facilitated the distribution and sale of at least 100 kilograms of cocaine. The sentence imposed is meant to be punitive in nature and to address the seriousness of the defendant's actions. The justification for a departure upward to 30 months is that the guidelines do not adequately take into effect the seriousness of the defendant's involvement nor the seriousness of this offense which involved the distribution of 100 kilograms of cocaine.

Gray timely appealed the sentence.

## II. Standard of Review

Review of a guideline sentence on appeal is generally governed by 18 U.S.C. § 3742(e) (1988), which provides, in relevant part:

> ... Upon review of the record, the court of appeals shall determine whether the sentence—
>
> .    .    .    .    .
>
> (3) is outside the applicable range, and is unreasonable, having regard for—
>
> (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
>
> (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
>
> (4) was imposed for an offense for which there is *no applicable sentencing guideline* and is plainly unreasonable.

The court of appeals shall ... give due deference to the district court's application of the guidelines to the facts.

In *United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989), the Sixth Circuit adopted a three-step test for reviewing departures, first enunciated in *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989):

*Step One:* Determine that the case is sufficiently unusual to warrant departure. Ask whether the circumstances of the case are *of a kind* or *to a degree* that they may be appropriately relied on to justify departure. As a question of law, review is *de novo*.

*Step Two:* Determine whether the circumstances that justify departure actually exist in the case. As a question of fact, review is for *clear error. See* 18 U.S.C. § 3742(d) (1988).

*Step Three:* Determine that the direction and scope of the departure was reasonable. Reasonableness is to be determined with due regard for "the factors to be considered in imposing a sentence," and "the reasons for the imposition of the particular sentence, as stated by the district court." 18 U.S.C. § 3742(e)(3) (1988). The court in *Joan* described review under this step as follows:

This third step involves what is quintessentially a judgment call. District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record. Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure.

*Joan*, 883 F.2d at 494.

### III. The Reasons for Departure

In making a departure from the guidelines, the district court must provide a "specific reason" supporting it. 18 U.S.C. § 3553(c)(2) (1988). "This requirement is satisfied by 'a short clear written state-ment or a reasoned statement from the bench' that identifies the aggravating factors and its reasons for connecting them to the permissible grounds for departure." *United States v. Feinman*, 930 F.2d 495, 501 (6th Cir.1991) (quoting *United States v. Kennedy*, 893 F.2d 825, 827 (6th Cir.1990); *United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989), *cert. denied*, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990)). The reasoned statement requirement gives the United States Sentencing Commission useful feedback, helps assure uniformity in sentencing, and aids in the appellate process by giving the parties and the reviewing court the precise considerations to argue and evaluate. *See Kennedy*, 893 F.2d at 828. We must remand for resentencing where the district court's statement concerning departure inadequately describes why a guideline does not encompass the circumstances of a particular case. *See Rodriguez*, 882 F.2d at 1066 ("If the district court fails to articulate the specific reasons for its departure in language relating to the Guidelines, we are unable to review its exercise of discretion."); *United States v. Fitzwater*, 896 F.2d 1009, 1011, 1013 (6th Cir.1990) ("Absent a specific finding, departure is not permitted.... [B]ecause the district court departed from the sentencing range established by the Guidelines without making a specific statement, the sentences of defendants ... are vacated and the case is remanded to the district court to set forth the specific reasons for its departure from the Sentencing Guidelines.").

In this case, the district court judge stated his reasons for departure on the judgment entry, *see supra*. His reasons were essentially that: (1) Gray was motivated by greed; and (2) the federal sentencing guidelines do not adequately take into account the seriousness of Gray's offense. The judge also stated reasons for departure in open court at sentencing:

... I think that what this man did was to participate, assist, in the distribution of narcotics, and, in my opinion, this is a matter that is of great importance. The lidocaine was significant in the drug conspiracy, as each sale of cocaine included one pound quantity of the adulterant,

which was then used to cut the drug and increase the original quantity.

The supplier of lidocaine, the defendant, was significant to the entire distribution process. And it is my opinion that the guidelines do not adequately take into account the seriousness of the involvement nor the seriousness of this offense, because in total there was involved a distribution of over 100 kilograms of cocaine. And, in my opinion, anyone who participates in the distribution of narcotics is a danger to our society and must be dealt with accordingly.

We conclude that the district court judge erred when and to the extent that he considered greed and the danger of narcotics to our society as factors justifying departure from the federal sentencing guidelines. Greed is obviously the chief motivation for drug-related crimes. For the drafters of the sentencing guidelines to have overlooked this is simply not credible. The fact that distribution of narcotics is a danger to our society is precisely why promoting it is a crime. This factor adds nothing to the inquiry whether a departure from the guidelines established for such crimes is appropriate. *See United States v. Aguilar-Pena*, 887 F.2d 347, 351 (1st Cir.1989).

■ The district court also departed from the federal sentencing guidelines due to the "seriousness" of Gray's offense. We find that the court's statements on this score "fail to explain how the guideline range was inadequate." *Kennedy*, 893 F.2d at 828. It is clear from the record that, at the time the probation officer prepared the presentence report, no specific guideline applied to a violation of 21 U.S.C. § 863. The guideline chosen, *Guidelines* § 2D1.7 (which, after November 1991 amendments, specifically applies to a violation of 21 U.S.C. § 863), applies to the unlawful sale or transportation of drug paraphernalia. Application Note One (effective November 1991—prior to the date of sentencing) to this section reads: "The typical case addressed by this guideline involves small-scale trafficking in drug paraphernalia (generally from a retail establishment that also sells items that are not unlawful). In a case involving a large-scale dealer, distributor, or manufacturer, an upward departure may be warranted."

While Gray's sales might constitute "large-scale" trafficking, he did sell the lidocaine hydrochloride "from a retail establishment that also sells items that are not unlawful," and the $61,000 he made from the sales did span approximately seventeen months. On remand, to justify a departure, the judge should give a reasoned statement as to how Gray's conduct is so "serious" that it is of a type, or to a degree, not reflected in the guideline chosen. *See United States v. Downs*, 955 F.2d 397, 400–02 (6th Cir.1992) (finding district court's statement that defendant "had a persistent involvement in drug-related criminal activity, both in and out of jail, and that this criminal history is not adequately reflected by the Guidelines" to be insufficient to satisfy the reasoned statement requirement—vacated and remanded); *Fitzwater*, 896 F.2d at 1011 (finding district court's statements that defendant "participated in a bank robbery where a weapon was used" and had a "past record" to be insufficient to satisfy the reasoned statement requirement—vacated and remanded); *Kennedy*, 893 F.2d at 828 (finding district court's statement that defendant "had a long history of violation of the law" to be insufficient to satisfy the reasoned statement requirement—vacated and remanded); *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989) (finding district court's statement that "the defendant's criminal history category significantly underrepresents the seriousness of the defendant's criminal history, and the seriousness of the defendant's criminal history more closely resembles that of a category VI criminal history" to be insufficient to satisfy the reasoned statement requirement—vacated and remanded); *United States v. Wilson*, No. 91–5483, 958 F.2d 372 (Table), 1992 WL 39132, at *2–*4, 1992 U.S.App. LEXIS 3761, at *6–*12 (6th Cir. Mar. 2, 1992) (finding district court's "unadorned" statement that an "upward departure is based upon the extreme conduct of Mr. Wilson and upon the premise that there exist, in this case, aggravating circumstances of a kind or degree not adequately taken into consideration by the sentencing commission and formulate [sic] to the guidelines applicable to a case such as this" to be insufficient to satisfy the reasoned

statement requirement—remanded for resentencing).

Since we find that the district court, in departing from the federal sentencing guidelines, considered inappropriate factors and did not adequately justify potentially appropriate ones, we need not continue to the next step of the three-step *Joan* analysis.

Gray's sentence is VACATED, and the case REMANDED for resentencing in accordance with this opinion.

KENNEDY, Circuit Judge, dissenting.

I agree with the majority that neither greed nor the danger to society from distribution of the narcotics in this case is a legitimate reason to depart upward. Both of these factors have already been taken into account in setting the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). Since each of these factors is involved in nearly all drug crimes, to allow either to serve as a justification for upward departure where the amount of narcotics, although large, is not unusual, would undermine the standardization of sentencing which is the very core purpose behind the Guidelines. I dissent, however, from the Panel's ultimate conclusion that defendant's sentence should be vacated and remanded for resentencing.

After setting out the framework for reviewing upward departures as set forth in *United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989), the majority fails to apply Joan's three-step test. I believe in doing so it misstates the law of this Circuit as required by *United States v. Rodriguez*, 882 F.2d 1059 (6th Cir.1989). In *Rodriguez*, the Court was faced with an upward departure based in part on factors not permitted under the Guidelines. The district court in *Rodriguez*, in stating the reasons for departing upward, referred to the defendant's national origin and inability to speak English. After recognizing the impermissi-

bility of these factors and removing them from consideration, the *Rodriguez* panel then went on to apply the three-step test for reviewing departures, basing its review on the remaining, permissible factors. Finding that the remaining valid factors were sufficient to justify the upward departure, it affirmed.

Here, too, the District Court relied on both impermissible and permissible factors. After removing from consideration defendant's greed and the danger to society from distribution of narcotics, I believe we should determine (1) whether the kind or degree of circumstances in the case justify a departure, (2) whether the District Court's factual determinations with regard to those circumstances are not clearly erroneous, and (3) whether the direction and scope of the departure are reasonable. *Joan*, 883 F.2d at 494; *Rodriguez*, 882 F.2d at 1067.

Because no specific Guideline applies to the crime for which defendant was convicted, 21 U.S.C. § 863, the District Court followed the mandate of U.S.S.G. Appendix A, applying the next most analogous Guideline, section 2D1.7, unlawful sale of paraphernalia. As the Panel acknowledges, Application Note 1 to 2D1.7 states the typical case anticipated by the section involves "small-scale trafficking." Application Note 1 then explicitly directs that in "a case involving a large-scale dealer, distributor, or manufacturer, an upward departure may be warranted." From January 1990 to May 1991, defendant sold enough lidocaine to facilitate the distribution of over 100 kilograms of cocaine. His profit from these sales was at least $61,000.[1] Under the first prong of the *Joan* test, I would find that these circumstances—referred to by the District Court in sentencing as the seriousness of the offense—are of a kind and degree justifying a departure. Under the second prong, the record does not indicate that the District Court was clearly erroneous in the factual findings upon

---

**1.** I do not understand the significance of the statement in the majority opinion: "While Gray's sales might constitute 'large scale' trafficking, he did sell the lidocaine hydrochloride 'from a retail establishment that also sells items that are not unlawful,' and the $61,000 he made

from the sales did span approximately seventeen months." Defendant at plea admitted he had *profits* of $61,000 from lidocaine hydrochloride sales to one Decker and knew it was being used by Decker to prepare cocaine to be ingested into the human body.

which these circumstances are based. Finally, considering the magnitude of drug sales facilitated by defendant and the Application Note's recognition that it may be inadequate for larger-scale sellers, I would find that the upward direction and the scope of the departure were both reasonable. As a result, I would affirm.