996 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Dean DOWNS, Defendant-Appellant.
 No. 92-5829.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1993.
 
 Before: NORRIS and SILER, Circuit Judges; and WEBER, District Judge.[1]
 PER CURIAM.
 
 
 1
 This is defendant James Dean Downs's second appeal of the sentence he received after pleading guilty to one count of credit card fraud, in violation of 18 U.S.C. § 1029(a), and one count of aiding and abetting possession with intent to distribute Dilaudid, a controlled substance, in violation of 21 U.S.C.S. § 841(a)(1), and 18 U.S.C. § 2. Both on remand and at the time of the original sentencing the district court departed upward from the Guideline range and sentenced Downs to a 120-month term of imprisonment. Like Downs's first appeal, the propriety of the upward departure is the sole issue on this appeal.
 
 I.
 
 2
 Downs's lengthy criminal history began in 1982 when he was convicted of obtaining property by false pretenses. During the 1980's Downs committed several criminal offenses while on probation or parole. In 1989 Downs committed theft of property while in jail when he obtained merchandise after using a jail telephone to order and falsely charge merchandise.
 
 
 3
 Downs's present conviction for credit card fraud resulted from acts he committed in May 1990 while he was in jail. Downs again used a jail telephone to pose as an employee in a store's credit department, thereby obtaining credit card numbers which he used to purchase merchandise by mail.
 
 
 4
 Downs's present conviction involving Dilaudid resulted from his acts in June 1990 when he arranged for the delivery of Dilaudid by posing as a Dr. Richards from a certain pharmacy in Nashville. Downs telephoned a physician and, after relating a fabricated story, stated that he needed a prescription for Dilaudid. The physician agreed to issue a prescription, and Downs instructed a former fellow inmate, Charles Canter, to pick up the Dilaudid and deliver it to a jailer, Charles Grimes. Federal authorities provided the Dilaudid to Canter; Canter delivered it to Grimes; Grimes was arrested and later stated that he was acting at Downs's instructions.[2]
 
 
 5
 At his first sentencing the district court correctly calculated that Downs's offense level was fourteen and that his criminal history points placed him in Criminal History Category VI. The Sentencing Guidelines mandate a sentence between 37 and 46 months for offense level 14 and Criminal History Category VI. The district court determined that an upward departure was justified and sentenced Downs to 120 months.
 
 
 6
 A panel of this Court vacated the sentence and remanded "to enable the district court to state specific reasons for departing from the Guidelines." United States v. Downs, 955 F.2d 397, 402 (6th Cir.1992).
 
 
 7
 On remand the district court again departed upward from the Guidelines imposing a 120-month sentence. The district court based its decision to depart on the following reasons:
 
 
 8
 [D]efendant's criminal history points amount to 17 due to several prior convictions, including convictions for obtaining property by false pretenses, selling a controlled substance, attempting to obtain a controlled substance by forgery, fraudulent use of a credit card and theft of property. This total places him well above the 13 criminal history points required for a criminal history category of six, which at the present time is the highest criminal history category, thus, the Guidelines do not adequately represent the defendant's prior criminal history record.
 
 
 9
 [Prior sentencing testimony] establishes that the defendant has been engaged in ongoing criminal activity for ten years. As the Court stated then, quote, he is incorrigible, end quote. He admits that fraudulently obtaining drugs is his profession and that during the past ten years he has not been employed for any substantial amount of time in a legitimate occupation.
 
 
 10
 The Government has put on evidence showing that the defendant has been engaged in prior adult criminal conduct similar to that for which he has been convicted, but for which he has not been convicted. It appears that the defendant has posed as a police officer, company officer, Visa and Mastercard officials, in order to obtain credit card numbers. He taught other inmates to commit credit card fraud, and the defendant was known as a drug dealer and induced others to pick up Dilaudid pills and deliver them to him in jail. Upon delivery he paid them a commission of five to ten pills per one hundred.
 
 
 11
 Although the defendant is not a career offender under the Guidelines, the defendant falls within the definition of a career offender under 28 U.S.C. § 9948 [sic: presumably § 994(h) ]. If the defendant was actually a career offender under the guidelines, the resulting offense level would be 34 with his criminal history category being six. That would mean a recommended sentence under the Guidelines of 262 to 327 months.
 
 
 12
 Since the defendant is not a career offender under the Guidelines but has been involved in criminal activity for the past ten years, an upward departure to a range that is significantly more than the Guideline recommendation of 37 to 46 months and significantly less than that of an actual career offender is warranted.
 
 
 13
 (J.A. at 247-249); see Appendix A.
 
 
 14
 Downs filed this second timely appeal.
 
 II.
 
 15
 Downs argues that the district court erred in its upward departure by relying on improper considerations, by reaching factual conclusions unsupported by the record, and by departing to an unreasonably excessive degree.
 
 
 16
 The district courts should sentence defendants within the range set in the Sentencing Guidelines unless aggravating (or mitigating) circumstances exist "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ..." 18 U.S.C. § 3553(b) (West Supp.1991); see also United States v. Rodriguez, 882 F.2d 1059, 1065 (6th Cir.1989), cert. denied, 493 U.S. 1084 (1990). Departure from the Guidelines "should be the exception rather than the rule ..." United States v. Joan, 883 F.2d 491, 496 (6th Cir.1989) (quoting United States v. Diaz-Villafane, 874 F.2d 43, 52 (1st Cir.), cert. denied, 493 U.S. 862 (1989)).
 
 
 17
 A three-part analysis applies to determine if the district court's upward departure from the Guidelines was warranted:
 
 
 18
 Step One: Determine that the case is sufficiently unusual to warrant departure. Ask whether the circumstances of the case are of a kind or to a degree that they may be appropriately relied on to justify departure. As a question of law, review is de novo.
 
 
 19
 Step Two: Determine whether the circumstances that justify departure actually exist in the case. As a question of fact, review is for clear error. See 18 U.S.C. § 3742(d) (1988).
 
 
 20
 Step Three: Determine that the direction and scope of the departure was reasonable. Reasonableness is to be determined with due regard for 'the factors to be considered in imposing a sentence,' and 'the reasons for the imposition of the particular sentence, as stated by the district court.' 18 U.S.C. § 3742(e)(3) (1988).
 
 
 21
 United States v. Gray, 982 F.2d 1020, 1022 (6th Cir.1993) (citing Joan, 883 F.2d at 494) (italics in Gray ).
 
 
 22
 The third step, reasonableness, is a flexible standard which "involves what is quintessentially a judgment call.... [A]ppellate review must occur with full awareness of, and respect for, the trier's superior 'feel' for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure." Gray, 982 F.2d at 1022 (quoting Joan, 883 F.2d at 494).
 
 A.
 
 23
 The circumstances relied on by the district court satisfy, as a matter of law, the first step in the Joan test, since the Sentencing Guidelines do not adequately account for the unusual circumstances in this case.
 
 
 24
 Past criminal conduct is an appropriate factor to consider for upward departure even though the Guidelines provide for sentence enhancement based on an individual's history of criminal acts. U.S. v. Kennedy, 893 F.2d 825, 828 (6th Cir.1990). "It is only when 'the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, [that] the court may consider imposing a sentence departing from the otherwise applicable guideline range.' " Id. (quoting U.S.S.G. § 4A1.3).
 
 
 25
 Downs's past criminal conduct demonstrates his remarkable determination to commit crimes, an unusual circumstance not contemplated in the Guidelines. Downs committed three offenses while under probation or parole and two offenses while in jail. He admitted that his profession is fraudulently obtaining prescription drugs and that for the past ten years he has engaged in ongoing criminal activity. The Guidelines do not contemplate this type of remarkable determination to commit federal crimes, and consequently, upward departure was warranted. Cf. United States v. Anders, 899 F.2d 570, 582 (6th Cir.1989), cert. denied, 498 U.S. 990 (1990) (defendant's arrest while on bond for a prior felony conviction proper basis, in part, for departure).
 
 
 26
 Downs's high number of criminal history points provided a proper basis for upward departure. Like the defendant in United States v. Christoph, 904 F.2d 1036 (6th Cir.1990), cert. denied, 498 U.S. 1041 (1991), Downs's seventeen criminal history points, four points beyond the level necessary to reach Criminal History Category VI (the highest category), placed him at a level where there can be no enhancement for the remaining four points absent an upward departure. See id. at 1042.
 
 
 27
 Downs contends that the district court's use of the term "incorrigible" was an improper basis for departure since concerns about a defendant's recidivism are already factored into the calculation of criminal history points. Downs is correct to the extent he argues that "the Guidelines account for and punish prior criminal behavior." United States v. Bennett, 975 F.2d 305, 309 (6th Cir.1992). Upward departure, however, is warranted when a defendant can be characterized as a "rampant recidivist[ ]" or, in other words, when "an unusually high likelihood of recidivism" exists. Id. Finding Downs "incorrigible" was a proper ground for upward departure because the definition of "incorrigible"--"bad beyond the possibility of correction or rehabilitation"[3]--is synonymous with rampant recidivism and goes to the heard of the concept of an unusually high likelihood of recidivism. Thus, as in Downs's case, when a sentencing court determines that a defendant is "incorrigible", that is, he or she is beyond the possibility of correction or rehabilitation, a proper ground exists as a matter of law for upward departure based on an unusually high likelihood of recidivism.[4]
 
 
 28
 Downs correctly contends that the district court erred in basing departure on his failure to hold a legitimate occupation for any substantial time during the past ten years. The Sentencing Guidelines specifically remove this factor as a basis for departure. See U.S.S.G. § 5H1.5 (policy statement). This error, however, is harmless because proper grounds existed for upward departure. Williams v. United States, --- U.S. ----, 112 S.Ct. 1112, 1120 (1992); Rodriguez, 882 F.2d 1059, 1066-67. In fact in this case Downs admits his profession is fraudulently obtaining prescriptions. Accordingly, Downs's circumstances were sufficiently unusual as a matter of law to justify upward departure.
 
 B.
 
 29
 Downs contends that the district court erred in relying on allegations of other criminal conduct which the government, by presenting only unreliable hearsay evidence, failed to prove by a preponderance of the evidence. Although he admits to the credit card fraud mentioned by the district court, Downs disputes the findings that he used fraud to obtain drugs, that he tried to get drugs into the prison where he was incarcerated, and that he was involved in a prescription scheme.
 
 
 30
 Downs's contentions go to the second step of the Joan test: Whether the district court's factual determinations regarding the circumstances supporting departure were clearly erroneous. 883 F.2d at 494. Any information may be considered at sentencing including hearsay statements concerning a defendant as long as there exists a "sufficient indicia of reliability to support its probable accuracy." United States v. Silverman, 976 F.2d 1502, 1513 (6th Cir.1992) (en banc) (quoting United States v. Herrera, 928 F.2d 769, 773 (6th Cir.1991)), cert. denied, --- U.S. ----, 113 S.Ct. 1595 (1993). The government must prove enhancement factors by a preponderance of the evidence. Id.
 
 
 31
 Downs's own statements and corroborating physical evidence were sufficient to show by a preponderance of evidence that Downs attempted to fraudulently obtains prescription drugs. Proof of his attempts to fraudulently obtain drugs consisted of Downs's admission, "this is my profession" (J.A. 125-126); his explanation of the scheme to an undercover informant (J.A. at 123); the physical evidence that was found during a search of Downs's cell which corresponded to Downs's method of fraud (J.A. at 205); and his reputation as a drug dealer (J.A. at 173).
 
 
 32
 Proof of Downs's attempts to induce others to bring drugs into the jail where he was incarcerated consisted primarily of testimony by Drug Enforcement Agency agent Vickie Jackson, based upon information supplied by Lisa Hall, a named informant. Hall's information contained sufficient indicia of reliability because it included details which were corroborated by other facts. See Herrera, 928 F.2d at 773. Hall was a named informant who had provided reliable information to authorities in the past. In this case she told investigators that: 1) Downs was involved in a fraudulent prescription scheme; 2) the drug involved was Dilaudid; and 3) Downs was trying to get drugs into jail through others. As in Herrera, sufficient indicia of reliability existed as to these statements since corroborating details were known by investigators. See id. 928 F.2d at 773-74.
 
 
 33
 The district court's reliance on the testimony of Beverly Collins, an agent for the Tennessee Bureau of Investigation, was not clearly erroneous. Her testimony related to an alleged prescription scheme in which several of the arrested parties implicated Downs. A search of Downs's cell produced hospital numbers and other information that corroborated the informants' hearsay testimony. Such corroborating evidence raises the hearsay testimony above the level of mere allegations and provides sufficient indicia of reliability.
 
 
 34
 Upon review of the record, the remaining factual conclusions reached by the district court, including the conclusion that Downs was "incorrigible", are supported by the record and are not, therefore, clearly erroneous.
 
 
 35
 Accordingly, the district court's factual determinations upon which it based upward departure were not clearly erroneous.
 
 C.
 
 36
 Downs argues that the district court's upward departure of seventy-four months to a sentence of 120 months was unreasonably excessive because the sentence was tantamount to a hypothetical criminal history category XIII. Downs also contends that the upward departure of seventy-four months cannot be justified by the district court's recognition that Downs nearly met the criteria of a statutory career offender even though he is not a career offender under the Guidelines.
 
 
 37
 The third step in the Joan test, the evaluation of reasonableness, is "quintessentially a judgment call." Gray, 982 F.2d at 1022 (quoting Joan, 883 F.2d at 494). Both the direction and degree of departure are measured by the standard of reasonableness. Joan, 883 F.2d at 494. The general reasons for imposing a given sentence must be compared with the district court's stated reasons for imposing the sentence in a particular case. United States v. Belanger, 892 F.2d 473, 475 (6th Cir.1989). "[T]he trial judge's determinations must be given great deference, and, unless there is little or no basis for the trial court's action in departing, it must be upheld ..." Joan, 883 F.2d at 496.
 
 
 38
 Factors the court should consider when reviewing the reasonableness of an upward departure include:
 
 
 39
 the seriousness of defendant's past criminal conduct; the likeliness of recidivism; prior similar adult conduct not resulting in criminal convictions; previous lenient sentences for serious offenses; and whether the sentence will have deterrence on future criminal conduct.
 
 
 40
 Id.
 
 
 41
 Considering these factors in Downs's case and given the great deference due the district court on the question of reasonableness, this Court concludes that the upward departure of seventy-four months was reasonable. The unusual circumstances presented by Downs's criminal activities demonstrate his remarkable determination to engage in criminal conduct which when combined with the seriousness of his ten-year record of criminal activity and the unusually high likeliness of recidivism establish the reasonableness of the seventy-four month departure.
 
 
 42
 Downs's challenge to the district court's method of calculating the amount of departure is flawed because he considers the extrapolation method approved in Kennedy, 893 F.2d at 829, and in United States v. Osborn, 948 F.2d 210 (6th Cir.1991), as the only proper method of calculating the amount of departure. Downs applies the statement in Kennedy--"a sentencing court must first look to the next higher criminal history category before departing from the Guidelines", 893 F.2d at 829--too mechanically. Neither Kennedy nor Osborn specifically precludes calculation of the amount of departure based on analogy to the career offender category as the district court did in Downs's case. Although research reveals no appellate case in the Sixth Circuit considering the propriety of an upward departure based on an analogy to the offense level of a career offender, both the Seventh and Tenth Circuits have approved such a procedure in appropriate cases. See United States v. Jackson, 921 F.2d 985, 993 (10th Cir.1990) (en banc); United States v. Ferra, 900 F.2d 1057, 1062 (7th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 1939 (1992). As long as it is explicitly stated, "court[s] may use any 'reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure.' " Jackson, 921 F.2d at 991 (quoting United States v. Harris, 907 F.2d 121, 127 (10th Cir.1990)); but see United States v. Streit, 962 F.2d 894, 906-908 (9th Cir.1992) (and cases cited therein disapproving of "arbitrarily moving to a new offense level when the highest criminal history category proves inadequate ..."), cert. denied, --- U.S. ----, 113 S.Ct. 431 (1992).
 
 
 43
 Kennedy, moreover, does not require the district courts to avoid considering the factors appropriate for justifying upward departure when calculating the extent of departure. Indeed, Kennedy was remanded, in part, because the district court failed to specify its reasons for departing, a remand which would have been unnecessary had the Court required a mechanical adoption of the next higher criminal history category. See Kennedy, 893 F.2d at 829; see also 18 U.S.C. § 3661.
 
 
 44
 In Downs's case, the district court was faced with an incorrigible individual who by virtue of his repeated offenses while on parole or probation or while in jail posed an unusually high likelihood of recidivism. In such a situation, it was appropriate for the district court to analogize to the offense level of a career offender under the guidelines. See Jackson, 921 F.2d at 993. In fact the question "what is the next criminal history category in this case?" could reasonably be answered by looking to the career criminal category. The Court explicitly stated its methodology: the 120-month sentence was less than half the distance between the maximum applicable range under the Guidelines (46 months) and the minimum applicable range under the Guidelines career offender status (262 months). Supra, p. 4. This constituted a reasonable amount of departure since it is less than the median (154 months) between the Guidelines career offender (262 to 327 months) and Downs's recommended range (37 to 46 months).
 
 
 45
 Downs's efforts to establish error by extrapolating the departure into the stratosphere of hypothetical criminal history category XIII does little to illuminate why the district court's analogy to near career offender status constituted error and does little to illuminate any unreasonableness. Downs relies primarily on United States v. Robison, 904 F.2d 365 (6th Cir.), cert. denied, 498 U.S. 946 (1990), where this Court found unreasonable a departure from a sentencing range of 30 to 37 months to a sentence of 96 months. The departure was unreasonable because of the "lack of actual reasons for such a departure and the failure of the district court to look to the next highest criminal history category." Id. at 372. Downs's case is distinguished from Robison in light of the actual reasons supporting the departure--particularly Downs's insistence on committing criminal offenses while on parole or probation and while in jail--which constitute circumstances not adequately accounted for in the Guidelines and which render appropriate the district court's decision to analogize to the offense level of a career offender. See Jackson, 921 F.2d at 993.
 
 
 46
 Accordingly, the district court's method of calculating the amount of departure was proper and its decision to depart seventy-four months, based on the previously-listed factors including Downs's repeated criminal violations while on parole or probation and while in jail, was reasonable.
 
 IV.
 
 47
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [2]
 For a more complete review of the factual background of this case see United States v. Downs, 955 F.2d 397, 398-400 (6th Cir.1992)
 
 
 [3]
 Webster's Third New International Dictionary 1145 (1981)
 
 
 [4]
 Whether the district court properly determined that Downs was "incorrigible" is factual question considered below in step two of the Joan test under the clearly erroneous standard