16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES, Plaintiff-Appellee
v.
Lawrence TAYLOR, Defendant-Appellant.
 No. 93-5728.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1994.
 
 Before: KEITH and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Lawrence Taylor appeals the fifteen-month sentence imposed by the district court following the entry of his plea of guilty. For the reasons stated herein we AFFIRM.
 
 I.
 
 2
 Defendant-Appellant Lawrence Taylor ("Defendant" or "Taylor") was convicted for the possession of material depicting minors in a sexual manner. The conviction was prompted by the defendant's wife, who contacted United States Postal Inspectors after she discovered a manilla folder in her husband's car that contained photographs of minors engaged in a variety of sexual acts, both with adults and with each other. Following this contact, both federal and local authorities instigated investigations of Taylor. In the course of the federal investigation, agents sent a magazine entitled "Swingers" to Taylor. He responded to two of the ads published in the magazine and submitted one of his own, presumably for publication in a subsequent issue.
 
 
 3
 In the course of the local investigation by Louisville, Kentucky police, Taylor corresponded with an undercover officer and mailed her two pictures of minor females, each lasciviously displaying her genitals and pubic area. Following receipt of these pictures, a meeting in a hotel room was arranged between the undercover officer and Taylor. Taylor believed that the purpose of this meeting was to allow him to engage in sexual relations with the undercover officer's three minor children. The officer told Taylor that the three children, ages 12, 10 and 7, were in the adjacent room. When Taylor entered the adjacent room, he was immediately arrested, pursuant to a federal warrant that had been issued following Taylor's earlier transmission of the two photographs to the local police officer.
 
 
 4
 A Jefferson County grand jury indicted Taylor on multiple counts of attempted sodomy and attempted rape. He pled guilty to these charges and was sentenced to five years probation. As a condition of this probation, Taylor was subject to six months of incarceration in the county jail.
 
 
 5
 Taylor was also indicted by a federal grand jury on one count of transmitting materials depicting minors in a sexually explicit manner. This first count of the federal indictment was dropped when the defense established that the photographs mailed to the undercover police officer were actually computer-generated images, derived from photographs of adults that had been altered to appear as children. A second count charging Taylor with possession of materials depicting minors in a sexually explicit fashion was added in a superseding indictment. This second count was based upon the photographs that Taylor's wife found in his car.
 
 
 6
 Taylor pled guilty to count two of the federal indictment pursuant to a plea agreement. The government agreed 1) not to oppose a two-level reduction for acceptance of responsibility; and 2) to recommend that the sentence imposed by the court be at the lowest end of the appropriate Guidelines range. In return, Taylor agreed to fully cooperate with the government and to pay any special assessments or fines that arose out of his guilty plea. Taylor further agreed not to oppose any sentence which incorporated the government's recommendation. Despite this agreement, Taylor objected several times during the sentencing hearing to, among other things, the lower court's 1) consideration of his state conviction when calculating his criminal history; 2) failure to decrease his Guidelines score by two points for substantial assistance to the government; and 3) determination that his incarceration in the Jefferson County jail was "imprisonment" within the Guidelines' definition of that term. The district court rejected Taylor's arguments and sentenced him to fifteen months of imprisonment. This appeal followed.
 
 II.
 
 7
 Taylor asserts that the lower court's consideration of his state court conviction in its calculation of his federal criminal history score was erroneous for three reasons. First, Taylor asserts that the state court conviction should not be considered in his federal sentencing because the conduct upon which the state conviction was premised occurred after he engaged in the behavior which was the basis of his federal conviction. Alternatively, Taylor argues that the state and federal investigations were so interwoven that the state conviction should not be considered separately for purposes of sentence enhancement. Finally, Taylor claims that his confinement in the Jefferson County Jail was not "imprisonment" for federal sentencing purposes. We find each of these arguments to be without merit.
 
 
 8
 A. THE TEMPORAL RELATIONSHIP BETWEEN THE TWO CONVICTIONS
 
 
 9
 Taylor alleges that his state sentence cannot be considered in the calculation of his federal criminal history score because the conduct that is the basis of the federal conviction preceded the conduct upon which the state charges are founded. However, Taylor's position is definitively rejected by reference to the plain language of the Guidelines. Section 4A1.1 of the Sentencing Guidelines instructs the trial court to add between one and three points to a defendant's criminal history score for a variety of prior sentences of enumerated lengths. The section defines a prior sentence as "a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense." U.S.S.G. Sec. 4A1.2, comment. (n. 1). Thus, the plain language of the Guidelines clearly permitted the lower court's two point increase in Taylor's criminal history score based upon his state sentence, which was imposed prior to the federal sentence and which included a term of six months incarceration.
 
 
 10
 The plain meaning of this clear statutory language is further clarified by United States v. Beddow, 957 F.2d 1330 (6th Cir.1992). In Beddow, we considered the issue of whether a sentence resulting from behavior that occurs after conduct that supports a federal conviction can be considered a "prior sentence" for purposes of sentence enhancement under the Guidelines. We held that the sequence of the sentences, and not of the behavior on which they were based, defined their use for purposes of Sec. 4A1.1. 957 F.2d at 1337. "The clear import of Application Note 1 is that 'the chronology of sentencing rather than the commission of the crimes [is] controlling.' " Id. (quoting United States v. Walling, 936 F.2d 469, 471 (10th Cir.1991)). We recently reaffirmed this conclusion in United States v. Escobar, 992 F.2d 87, 89 n. 2 (6th Cir.1993) ("In ... this Circuit ... it is the chronology of sentencing, rather than the chronology of the commission of the crimes, which is controlling.").
 
 
 11
 Taylor was sentenced by the state court in December 1992. Taylor's federal sentence was imposed on May 13, 1993. Accordingly, the lower court did not err in considering Taylor's state sentence when calculating his criminal history score under the Guidelines.
 
 B. THE CONDUCT PUNISHED BY EACH CONVICTION
 
 12
 Taylor alternatively argues that the behavior which sustained his state conviction is linked to the behavior supporting his federal conviction, thus preventing the lower court's consideration of the state sentence when calculating his criminal history score for federal sentencing purposes. This argument is also without merit.
 
 
 13
 The Sentencing Guidelines instruct a trial court that prior sentences can be considered only if such sentences are imposed for conduct other than that being punished in the current federal case. Specifically, the Guidelines state:
 
 
 14
 A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant to the instant offense under the provisions of Sec. 1B1.3.
 
 
 15
 U.S.S.G. Sec. 4A1.2, comment. (n. 1) (emphasis added).
 
 
 16
 In an attempt to facilitate application of this language to actual cases, in Beddow, 957 F.2d at 1338, we referred to a variety of factors that courts should consider when determining whether conduct underlying prior sentences is severable from conduct supporting a federal conviction. These factors include "the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent." Id.
 
 
 17
 In the instant case, Taylor was convicted in state court for attempted rape and attempted sodomy of minor children. His federal conviction, on the other hand, was for the transmission of materials depicting children in a sexually explicit manner. The behavior underlying these two convictions was temporally and geographically distinct. Moreover, they did not exploit a common victim, or arise out of a common criminal scheme other than the very general strategy of abusing children.[1] The attempted rape and sodomy of the undercover agent's fictional children, therefore, was not a "part of the instant offense." Consequently, the lower court's consideration of Taylor's state conviction for purposes of federal sentencing was not erroneous.
 
 
 18
 C. "IMPRISONMENT" FOR FEDERAL SENTENCING PURPOSESES
 
 
 19
 With respect to his federal sentence, Taylor finally claims that the lower court erred in determining that his state sentence imposed a period of imprisonment that could be legitimately incorporated into the computation of his federal sentence under Guidelines Sec. 4A1.1(b). Specifically, Taylor argues that his incarceration in the Jefferson County Jail cannot be considered "imprisonment" under the Guidelines for two reasons: 1) a defendant is imprisoned only if he is confined in a state institution; and 2) he was allowed to leave the prison during the period of his incarceration to go to work and attend counseling, thus making his sentence an alternative sentence and not a "sentence of imprisonment." Both of these assertions are without merit.
 
 
 20
 Guidelines Sec. 4A1.1(b) provides that a trial court should add two points to a defendant's criminal history category for "each prior sentence of imprisonment of at least sixty days not [previously] counted." The Guidelines further announce that "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. Sec. 4A1.2(b).
 
 
 21
 Taylor cites to no authority that instructs us to ignore the plain language of the Guidelines and hold that a "sentence of imprisonment" may only be served in a state institution. Nothing in the language of the Guidelines gives any justification for limiting the definition to confinement in state institutions alone; and the appellant has provided no valid reason for our doing so.
 
 
 22
 Taylor's assertion that his state sentence should not be counted under Sec. 4A1.1(b) because it was an alternative sentence is similarly without merit. While sentences of confinement to halfway houses or boot camp-type facilities are arguably not imprisonment for purposes of federal sentencing, Taylor was not sentenced to such an institution. Taylor was sentenced to jail. The fact that he was allowed to leave the jail to go to work and attend counselling does not transform his prison sentence into anything other than what it is. Accordingly, the validity of arguments opposing the consideration of alternative sentences in the calculation of a defendant's criminal history category is not at issue here.
 
 
 23
 Taylor was sentenced to five years probation. A condition of this probation was that he spend six months in the Jefferson County Jail. We cannot find that the lower court erred at sentencing by considering this state sentence, as it was a "prior sentence of imprisonment of at least sixty days" that had not been previously counted. U.S.S.G. Sec. 4A1.1(b).
 
 III.
 
 24
 Taylor also asserts that the lower court failed to apply a two-point reduction for the substantial assistance that he provided to the government. In so arguing, Taylor asks this court to reconsider our prior decisions in United States v. Gardner, 931 F.2d 1097 (6th Cir.1991), and United States v. Levy, 904 F.2d 1026 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991).
 
 
 25
 We are without the authority to disregard an earlier panel's prior published decision. United States v. Edge, 989 F.2d 871, 876 (6th Cir.1993). Even if we were vested with such authority, Taylor gives no legitimate reason for it to be exercised in the instant case. Accordingly, we decline his invitation to revisit our prior holdings.
 
 
 26
 In Levy, we found that in the absence of a government motion, the district court has no duty or responsibility to award a defendant a two-point reduction based upon substantial assistance. Levy, 904 F.2d at 1035. We reached a similar conclusion in Gardner:
 
 
 27
 While the decision whether to depart from a mandatory sentence due to a defendant's substantial assistance remains with the district court, the government's power to move for a departure "is predicated on the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance."
 
 
 28
 Gardner, 931 F.2d at 1099 (quoting Levy, 904 F.2d at 1035-36). In light of Levy and Gardner, Taylor's assertion that the lower court erred by not awarding a downward departure, where the government failed to make a motion for such, is without merit.
 
 IV.
 
 29
 Finally, Taylor argues that the lower court erred when it enhanced his sentence based upon a doctor's report that was presented at sentencing. This report indicated that based upon the doctor's examination of the photographs, it was his opinion that the children depicted in the photographs were under the age of twelve. Accordingly, the district court applied a two-level enhancement to Taylor's base offense level pursuant to Sec. 2G2.2(b)(1). This section provides for a two-level increase where the children involved in the offense are either prepubescent or under the age of twelve. Taylor argues that this enhancement was erroneous because he was not afforded an opportunity to cross-examine the doctor at the sentencing hearing, in violation of his constitutional right to confrontation.
 
 
 30
 While a defendant clearly has the right to a fair sentencing hearing, United States v. Anders, 899 F.2d 570, 575 (6th Cir.), cert. denied, 498 U.S. 990 (1990), the constitutional right to confrontation is not required to accord fairness to such proceedings. "When defendants have pleaded guilty, as in this case, sentencing does not mandate confrontation and cross-examination on information submitted to the court through the presentence reports and law enforcement sources." United States v. Silverman, 976 F.2d 1502, 1510 (6th Cir.1992), cert. denied, 113 S.Ct. 1595 (1993). The trial judge is limited in his consideration of information at sentencing only by a requirement that the information be supported by "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3(a). "So long as the evidence in the presentence report bears 'some minimal indicia of reliability in respect of defendant's right to due process,' the district court, after adoption of the guidelines, may still continue to consider and rely on hearsay evidence without any confrontation requirement." Silverman, 976 F.2d at 1511. See also United States v. Herrera, 928 F.2d 769, 773 (6th Cir.1991); United States v. Robinson, 898 F.2d 1111, 1115-16 (6th Cir.1990). Taylor has presented no evidence that contradicts the district court's determination that the doctor's report was reliable. Accordingly, his final argument is also without merit.
 
 V.
 
 31
 For the foregoing reasons we affirm the decision of the lower court.
 
 
 
 [1]
 It might also be noted that the conduct underlying the state charge could not have been punished by the federal government, as rape and sodomy are state and not federal crimes