NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0143n.06
No. 22-3028

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 24, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| LONDON D. VINSON, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: CLAY, WHITE and THAPAR, Circuit Judges.

**CLAY, Circuit Judge**. Defendant London D. Vinson appeals the district court's 63-month within-guidelines sentence imposed after he pleaded guilty pursuant to a plea agreement to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

**Factual Background**

On January 28, 2021, an Ohio Adult Parole Authority (APA) officer observed Facebook posts he believed belonged to London Vinson, who was on parole and under supervision following an aggravated assault conviction. In a Facebook post dated December 21, 2020, Vinson stated he bought a "Glock with a [ruler clip]." Sentencing Hrg., Trans., R. 34, Page ID # 220. The APA officer continued to surveil Vinson's Facebook account, and on January 30, 2021, observed a Facebook story on Vinson's account from which the officer inferred that Vinson was at a shooting range in Las Vegas, Nevada. Then, on February 3, 2021, the APA officer observed a Facebook

story on Vinson's account showing a hand holding a semiautomatic pistol which the APA officer believed to be the hand of Vinson.

Based on these observations, on February 4, 2021, the APA officer and officers assisting him conducted a parole search of Vinson's residence. When the officers approached Vinson at his residence, they noticed a marijuana magazine and a digital scale in plain view, and subsequently detained and handcuffed Vinson. The officers then performed a security sweep of the house. In Vinson's bedroom, the officers found a handgun under the mattress, along with two rounds of 9mm ammunition in the nightstand and two magazines of AR-15 ammunition and a spent .223 caliber shell casing in a duffle bag in the closet. The officers also found another round of 9mm ammunition and a spent 9mm casing in a side table in the living room of Vinson's residence.

Vinson admits that an associate purchased the handgun for him at a gun show, and that he obtained the firearm for the purpose of protection. Vinson does not dispute that the firearm was shipped and transported in interstate commerce prior to sale. Subsequent examination of the firearm revealed that it contained a magazine that could hold eighteen rounds of ammunition.

**Procedural History**

On May 27, 2021, a grand jury in the Northern District of Ohio indicted Vinson on one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). In August 2021, Vinson entered into a written plea agreement with the government and pleaded guilty pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.

The plea agreement did not contain any assurances as to the sentencing range to be used, but the parties stipulated to the computation of the advisory sentencing guidelines base offense level. The parties agreed that under U.S.S.G. § 2K2.1(a)(6), which applies in cases involving the impermissible possession of a firearm by a convicted felon, the base offense level of Vinson's

crime was 14. The parties further agreed to recommend to the court a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), so long as Vinson's conduct continued to reflect his acceptance. No agreement as to the criminal history category was made by the parties. The terms of the plea agreement make clear that the base offense level recommended in the plea agreement is not binding on the court. For example, the agreement states that "the advisory guideline range will be determined by the Court at the time of sentencing, after a presentence report ["PSR"] has been prepared," but the "parties agree that no other specific offense characteristics, Guideline adjustments or Guideline departures apply." Plea Agreement, R. 16, Page ID # 51–52. The agreement also contains a clause stating that "Defendant understands that sentencing rests within the discretion of the Court." *Id.*, Page ID # 51.

On August 12, 2021, the court conducted a plea hearing. During the plea hearing, the district court confirmed that Vinson had read and reviewed the terms of the plea agreement with his attorney, and that he understood the terms of the agreement. The district court then informed Vinson that the court may consider the recommendations in the plea agreement but is not required to follow them. The court further stated that if the court chooses to go beyond the recommendation described in the plea agreement, Vinson has the right to appeal but would not be permitted to withdraw his plea. Vinson then confirmed his understanding of the plea agreement's terms.

The court then reviewed specific provisions in the plea agreement highlighting the guideline recommendations and the factors the court uses to determine sentences. The court noted that the parties recommended "a base offense level [of] 14 [and a]. . . [t]wo level [reduction] for acceptance . . . [resulting in] an offense level [of] 12." Plea Hearing Trans., R. 36, Page ID # 262. When prompted by the court, the parties stated that they anticipated that Vinson's criminal history would place him in criminal history category VI. The court estimated that Vinson would face a

guideline range of 30 to 37 months based on an offense level of 12 and criminal history category of VI. The court then reminded Vinson that these calculations were estimates and the final calculation would be based on a written PSR, which might not be consistent with the parties' recommendation. The court informed Vinson of his right to object to the PSR, including to the guideline calculation recommended therein. Vinson confirmed he understood. After the court reviewed Vinson's right to appeal, the factual basis of his offense, and the forfeiture of his constitutional rights, Vinson pleaded guilty, and the court accepted his guilty plea.

The first disclosure of the PSR was filed on October 21, 2021, and mirrored the stipulated base offense level of 14 in Vinson's plea agreement. However, the final disclosure of the PSR, filed on November 17, 2021, incorporated additional information obtained through further investigation and accordingly recommended the higher base offense level of 20 based on U.S.S.G. § 2K2.1(a)(4)(B). The final PSR reasoned that because officers had ascertained that the firearm Vinson possessed could hold up to 18 rounds of ammunition, making it capable of accepting a large capacity magazine, the firearm therefore warranted a higher offense level. On November 23, 2021, Vinson filed a Sentencing Memorandum noting that he "and the [g]overnment entered into a plea agreement concurring that his base offense level is 14," and "urg[ing] th[e] Honorable Court to honor the plea agreement and acknowledge the base offense level of 14." Pet'r's Sentencing Mem., R. 21, Page ID # 138–39.

The district court held a sentencing hearing on January 11, 2022. Vinson objected to the PSR's base offense level recommendation being higher than the base offense level stipulated in the plea agreement. The court noted that the plea agreement offers a recommendation, not a requirement for the court, and subsequently overruled Vinson's objection. The court noted that the base offense level of 20 was appropriate in cases involving semiautomatic firearms that can

accept a large capacity magazine. Accordingly, the court adopted the PSR's recommendation of a base offense level of 20 rather than the plea agreement's base offense level of 14. The court, through the direction of the parties, applied a downward adjustment of three levels for the acceptance of responsibility. Following the offense level determination, based on Vinson's 26 criminal history points, the court found criminal history category VI appropriate. Accordingly, Vinson's offense level of 17 and criminal history category of VI yielded a guidelines range of 51 to 63 months' imprisonment. The court stated that it was considering an upward variance due to Vinson's high number of criminal history points; however, the court ultimately did not vary upwards.

Vinson reiterated his objection and asked the court to impose a sentence within the guidelines range outlined in the plea agreement, arguing the facts related to the firearm's capabilities in the PSR were not available to either party while negotiating the plea agreement, and the agreement was made based on the information known at the time. Vinson did not dispute the accuracy of the information used in the PSR. The court, again, overruled the objection. The court added that, even if the plea agreement's base offense level had applied, the court would "vary up substantially because of this record and because of the items [Vinson] possessed." Sentencing Hrg., Trans., R. 34, Page ID # 219.

The court proceeded to apply the requisite factors under 18 U.S.C. § 3553(a). First, the court described the nature of Vinson's offense which mirrored the events described in the PSR. As to Vinson's criminal history, the court noted that Vinson was 31 years old, and had a "staggering" number of adult convictions including: "obstructing official business, robbery, theft, receiving stolen property, misrepresenting identity, suspended driver's license, aggravated theft, identity fraud, failure to comply with the order/signal of a police officer, resisting arrest, [operating

a vehicle while intoxicated], driving under suspension, aggravated assault, possession of shoplifting tools, larceny, and criminal trespass." Sentencing Hrg., Trans., R. 34, Page ID # 220–221. Defense counsel noted that, while Vinson's criminal convictions were extensive, many were thefts, not crimes "that would threaten any kind of bodily harm to another individual." *Id.*, Page ID # 211–212. The court disagreed with this framing of his criminal history, viewing it instead as continued behavior that harmed society, and proceeded to discuss Vinson's behavior while incarcerated, by pointing to Vinson's thirty-six behavioral violations during his 12-month incarceration in 2010, and similarly high number of infractions in his 2013 and 2015 incarcerations. The court expressed that the record was expansive given that the sentences imposed in these instances did not exceed 28 months. This led to the finding by the court that the punishment Vinson received in the past has not served as a deterrent given his extensive record of adult convictions and institutional infractions, and the instant offence being committed on parole.

The court also described Vinson's childhood, noting that he witnessed the abuse of his mother by his father who suffered mental health issues, and both parents being addicted to drugs. The court noted Vinson's report that his mother had passed away when he was 16, and that he had witnessed violence and drug activity in his neighborhood. The court also noted Vinson's reports of sexual molestation, and that he had served as a father figure for his brother's children, after his brother was killed in 2018. However, the court met the descriptions of Vinson's background with skepticism, noting that Vinson's statements as to his personal background were not "corroborated." Sentencing Hrg., Trans., R. 34, Page ID # 221. The court went on to describe Vinson's reportedly positive relationship with his family members, that he had obtained his GED, and his good physical and mental health.

The court observed that the average imprisonment range for defendants with similar offense levels and criminal history categories was 53 months (the median range was 51 months), and then found that any disparity in Vinson's sentence was justified by his particularly long criminal history. The court then sentenced Vinson to 63 months, the high-end of the applicable 51-to-63 guideline range calculated in the PSR.

The court gave the parties the opportunity to object to the sentence at the end of the hearing, in accordance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Defense counsel objected "to the sentence that was just tendered by this Court." Sentencing Hrg., Trans., R. 34, Page ID # 235. Vinson also asked that the court depart downward, under U.S.S.G. § 5K2.23, to account for the time that Vinson had served in state custody before he was indicted in this case. Vinson was placed in state custody on February 4, 2021, purportedly for the same facts and circumstances of which he was indicted in the district court in May of 2021. The court found Vinson's request to be inappropriate since the incarceration was due to a parole violation and not for the federal offense at issue and credited time served for this instant offense only. Vinson timely appealed.[1]

## II. DISCUSSION

The issues on appeal are whether: (1) the court erroneously deviated from the plea agreement's base offense level stipulation, and (2) the court procedurally or substantively erred in sentencing Vinson.

---

[1] The district court referred to Vinson during the sentencing as a "scourge on the community," and a "one-man crime spree" on multiple occasions. Sentencing Hrg., Trans., R. 34 Page ID # 218, 226, & 230. Further, in response to Vinson's statement regarding his integral role in his nephews' lives, the court asked, "How in the world could these children, what could they learn from this defendant's history and record?" *Id.*, Page ID # 222. These remarks were also coupled with a consistent skepticism of Vinson's account of his personal background. Although the tone of some of the court's language may have been harsh, that does not change the ultimate decision in this case.

**Analysis**

1.      **Binding Nature of the Plea Agreement**

Vinson argues that the district court erred in applying the base offense level recommendation in the PSR because the new information in the PSR report was available at the time the government entered the plea agreement and so should not be considered when calculating Vinson's sentence.[2]  "Questions regarding the content of the plea agreement are questions of fact, which this court reviews for clear error."  *United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014) (citing *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000)).  "Under this standard, a reviewing court must ask whether on the entire evidence it is left with the definite and firm conviction that a mistake has been committed."  *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (internal quotations omitted) (quoting *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)).

The issue in this case turns on whether the plea agreement is governed by Federal Rule 11(c)(1)(B) or Federal Rule 11(c)(1)(C), the subsections of the Federal Rules of Criminal Procedure that dictate whether the agreement is binding.  *See United States v. Kemper*, 908 F.2d 33, 35 (6th Cir. 1990) (analyzing Federal Rule 11(e)(1)(A)–(C), currently codified as Federal Rule 11(c)(1)(A)–(C)).  Defendant correctly concludes that that under Federal Rule 11(c)(1)(B) the court is not required to follow the base offense level stipulated in the plea agreement.  *See id*. However, if the plea agreement is governed by Federal Rule 11(c)(1)(C), and the court rejects the plea agreement's recommendation, "the court shall afford the defendant an opportunity to withdraw the defendant's guilty plea."  *Id*. at 37 (citing to Federal Rule 11(e)(4) in its reasoning,

---

[2] We note that at the district court, Vinson argued that the information in the PSR was not available to the parties when they executed the plea agreement.  Sentencing Hrg., Trans., R. 34, Page ID # 210–11.

currently codified as Federal Rule of Criminal Procedure 11(c)(5)(B)). The government concedes that only Rule 11(c)(1)(A) is mentioned in the plea agreement with no mention of the subsections that delineate the binding nature of the agreement. However, the government argues that "the agreement's remaining nonbinding language, as understood and explained by the Court and acknowledged by all parties, made clear that the parties intended to proceed under subsection (c)(1)(B)." Resp't's Br., ECF No. 39, 24. We agree.

Plea agreements "are contractual in nature" and subject to "traditional principles of contract law." *Fields*, 763 F.3d at 453 (quoting *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)). When determining whether the government breached a plea agreement, the Court looks to "what the defendant reasonably understood" when he entered into the agreement. *United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991). "The most persuasive evidence of what a defendant reasonably appreciated as his bargain is found in the plain language of the court-approved agreement." *Fields*, 763 F.3d at 453 (internal quotations omitted) (quoting *United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993)). For "imprecisions or ambiguities" in plea agreements, the trial court should hold the government to "a greater degree of responsibility than the defendant." *Id.* (quoting *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992)).

In this case, no ambiguity exists as to the nonbinding nature of the plea agreement. It is clear based on the written agreement and the court's colloquy that the parties intended the agreement to be governed by Federal Rule 11(c)(1)(B). The agreement states that the "the advisory guideline range will be determined by the Court at the time of sentencing, after a presentence report ("PSR") has been prepared," and "sentencing rests within the discretion of the Court." Plea Agreement, R. 16, Page ID # 51–52. Vinson argues that the terms "stipulate" and "agreed" used throughout the agreement evidence the binding nature of the agreement. However, the terms

simply indicate that the parties reached an understanding as to the base offense level, not that the court was bound by any agreement made by the parties.[3] Further, the district court repeatedly reminded Vinson at the plea hearing that the plea agreement serves as a recommendation but not a requirement. The court stated that if it does reject the recommendation of the plea agreement, Vinson would have the right to appeal but would not be permitted to withdraw his plea. Vinson confirmed his understanding of the court's statements, and "[w]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (internal quotations omitted) (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)). It is well established on the record that a reasonable defendant would understand that the base offense level recommendation stipulated in this plea agreement did not bind the court. *See Herrera*, 928 F.2d at 771.

Vinson does not argue that the parties agreed to exclude the fact of the large-capacity magazine after negotiation or that inclusion of the fact in the PSR was inaccurate. Instead, Vinson asserts that the court should have made an erroneous sentencing calculation, based on incomplete facts or the government's oversight or acquiescence, instead of following the recommendation in the PSR that accurately reflected the case's circumstances. As discussed above, the agreement was unambiguously nonbinding, and the court did not err in adopting the PSR's recommendation in its sentencing decision.

---

[3] The government adhered to its end of the bargain and did not argue in favor of the higher offense level, noting instead that it "enter[ed] into the plea agreement in good faith" and "defer[ed] to the Court on sentencing." Sentencing Hrg., Trans., R. 34, Page ID # 218–19.

### 2. Procedural and Substantive Reasonableness

Criminal sentences are reviewed for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court can commit procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* A sentence will be found to be substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (internal quotations omitted) (quoting *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)); *see United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) ("In short, procedural review of a sentence concerns the propriety of the factors that go into a sentence; substantive review assesses the reasonableness of the sentence that results."). Under the abuse of discretion standard, a defendant's argument must go beyond "asserti[ng] that the district court should have balanced the § 3553(a) factors differently." *Sexton*, 512 F.3d at 332.

#### a. *Procedural Reasonableness*

Vinson argues that the court failed to use the base offense level stipulated in the plea agreement, constituting a violation of procedural due process. As discussed above, this is incorrect and no violation by the court exists. Vinson also contends that the court procedurally erred when it focused exclusively on Vinson's criminal history and did not articulate how his history differed

from others in the same criminal category. However, we find that the district court imposed a procedurally reasonable sentence and did not err in its evaluation of Vinson's criminal history.

"A sentence is procedurally unreasonable if the district court fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Mayberry*, 540 F.3d 506, 517–18 (6th Cir. 2008) (internal quotations omitted) (quoting *United States v. Jones*, 489 F.3d 243, 250–51 (6th Cir. 2007)). "[P]rocedural reasonableness does not require that a district court provide a rote listing or some other ritualistic incantation of the relevant § 3553(a) factors." *United States v. Kroffke*, 776 F. App'x 304, 308 (6th Cir. 2019) (quoting *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007)). "An explanation is typically adequate if it addresses the factors from 18 U.S.C. § 3553(a) that are relevant to the district court's sentencing decision." *Id.* (quoting *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015)). The district court must also "provide some indication that the court considered the defendant's arguments in favor of a lower sentence and the basis for rejecting such arguments." *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008).

The guideline for 18 U.S.C. § 922(g)(1) offenses is found in U.S.S.G. § 2K2.1. Subsection 2K2.1(a)(4)(B) provides a base offense level of 20 if the offense involves a "semiautomatic firearm that is capable of accepting a large capacity magazine" and the defendant was a person prohibited from possessing such firearm at the time of the offense. In this case, the district court applied the offense level of 20, based on the PSR's findings that Vinson was prohibited from possessing a firearm and Vinson's weapon accepted a large capacity magazine. These facts are not objected to or in dispute. The court imposed a 63 month sentence that is within the guideline range applicable

to Vinson, based on the base offense level of 20, and it did not err in choosing a sentence at the high-end of the applicable range based on Vinson's criminal history.

Vinson does not dispute the events articulated by the court as to his offense and ownership of the firearm. In reviewing Vinson's criminal history, the court did not characterize Vinson's history as "overly violent," as Vinson suggests, but rather, emphasized the habitual nature of his criminal activity. With over 20 convictions at the age of 31 years old, the court was not incorrect in its characterization. The court is permitted to focus on deterrence when evaluating § 3553(a) factors. *See Solano-Rosales*, 781 F.3d at 355. Although skeptical of Vinson's arguments, the court did consider Vinson's personal background but ultimately found that the factors did not outweigh his extensive criminal history. The court properly cited Vinson's history of criminal activity and his poor disciplinary record when previously incarcerated as evidence that a long incarceration was necessary to deter Vinson from future criminal activity and protect the public from future crimes.

Throughout the court's explanation, the court made clear that it was selecting a sentence at the high-end of the applicable range to provide adequate deterrence, promote respect for the law, protect the public, and to reflect the seriousness of Vinson's offense. Because the district court here sufficiently considered the § 3553(a) factors and adequately explained why it chose a within-guidelines, 63-month sentence, we find that Vinson's sentence was not procedurally unreasonable.

### b.      *Substantive Reasonableness*

"A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Lapsins*, 570 F.3d

758, 772 (6th Cir. 2009) (internal quotation omitted) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)).

The Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005). With that in mind, this Court presumes that within-guidelines sentences are reasonable. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). While a district court may not give any one sentencing factor an unreasonable amount of weight, the court "may place great weight on one factor if such weight is warranted under the facts of the case." *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013). Thus, "this Court has recognized that the manner in which a district court chooses to balance the applicable sentencing factors is beyond the scope of the Court's review." *Id.*

In Vinson's opening brief, he furnishes only one sentence in support of his argument: "Here, the trial judge double counted Mr. Vinson's criminal history and focused almost exclusively upon that single factor." Pet'r's Br., ECF No. 34, 13. Vinson fails to rebut the presumption of reasonableness that applies to the district court's sentencing determination. As summarized above, the court thoroughly analyzed and appropriately weighed the factors under § 3553(a) in concluding that Vinson merited a sentence of 63 months. Thus, the district court imposed a substantively reasonable sentence.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment.